

# RAILROAD COMMISSION OF TEXAS

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, et al., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § | Civil Action No. 3:23-cv-00017 |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, et al. | § § § § | |
| *Defendants*. | § § | |

### DECLARATION OF LESLIE L. SAVAGE

I, Leslie L. Savage, hereby declare as follows:

1. I am the Chief Geologist and Water Quality Certification Agent in the Oil and Gas Division of the Railroad Commission of Texas (RRC). I have been employed by the RRC in this or similar capacity since November 7, 1983. I am responsible for overseeing the implementation of the Clean Water Act (CWA) related to Oil and Gas Exploration, Production, and Transportation in Texas with respect to water quality certifications.
2. RRC has effectively regulated the oil and natural gas industry in the State of Texas since 1919. The RRC's primary statutory responsibilities in the regulation of Texas oil, gas and geothermal resources, as well as lignite mining, are to conserve the State's natural resources; prevent the waste of natural resources; protect the correlative rights of mineral interest owners; protect the environment from pollution associated with oil, gas, geothermal, and surface mining activities, and ensure safety by mitigating hazards inherent to the oil and gas industry, including but not limited to, hydrogen sulfide in oil or gas wells.
3. Texas is the nation's largest producer of oil and natural gas with over 160,000 active oil wells and over 87,000 active gas wells. This energy production generally supports 1.5 million jobs in Texas and 9% of the State's economy. The industry not only benefits Texas, but the entire United States. Nationally, Texas produces 43% of all domestic crude oil and 26% of all domestic natural gas.
4. Based on my position, I have personal knowledge and experience to understand the

### EXHIBIT 4

many steps the RRC will likely undertake in direct response to the Environmental Protection Agency's and the U.S. Army Corps of Engineers' *Revised Definition of "Waters of the United States"* published on January 18, 2023 (hereinafter "the Rule").

5. In my opinion, the Rule's incorporation of the vague significant nexus test expands federal jurisdiction over land and waters and provides no guidance or criteria for identifying the upper boundary and limits of federal jurisdiction. The rule increases federal government oversight of smaller bodies of water, including intermittent streams, in Texas and across the nation. The rule captures waters great distances from navigable waters including those previously considered isolated or exempt. Thus, significantly more property, particularly in arid regions such as west Texas, will become subject to federal CWA jurisdiction. The increased regulatory burden will be out of proportion to reasonably foreseeable gains in water quality protection. I have determined that the potential for the Rule to significantly expand the jurisdictional waters under the CWA, which is determined by the Corps on a case-by-case basis, will require RRC to expend additional taxpayer resources absent relief from this Court. For example, expansion of the rule will lead to the requirement for more Corps actions under Section 404 of the CWA, which will require more CWA-driven water quality certifications from the RRC. In addition, EPA and the Corps failed to sufficiently determine the cost of the rule, including the additional costs to State programs. Any new WOTUS rule that expands federal jurisdiction or creates regulatory uncertainty will result in increased implementation costs to the State and other private and public interests, but these impacts have not been evaluated by the agencies. A greatly enlarged scope of federal jurisdiction could increase the RRC's costs for Section 401 water quality certifications. The agencies stated that "in comparing 2020-2021 to similar annual data from 2016-2020 from implementation of the 1986 regulations consistent with Supreme Court case law, there was an average increase of over 100% in the number of projects determined to not require section 404 permits under the Clean Water Act due to activities not occurring in "waters of the United States" or activities occurring in waters that were deemed no longer "waters of the United States" due to the 2020 NWPR." The agencies further stated that the number of projects that did not require a section 404 permit under the 2020 NWPR was likely much greater than these numbers indicate, particularly in the arid West. The agencies analysis indicates that the rule would result in a 100% increase in the workload to States in the issuance of Section 401 water quality certifications. Without commensurate compensation for implementation, the agencies' expanded redefinition of WOTUS would constitute an unfunded mandate to States in their obligations under the CWA.
6. Implementation of the Rule and the devotion of resources to an expanded scope of "waters of the US" will cause the RRC irreparable harm in the Rule becomes effective.

I declare under penalty of perjury that the foregoing is correct. Executed on this 7th day of February, 2023 in Austin, Texas.

*Leslie Savage*

Leslie L. Savage, Chief Geologist

Railroad Commission of Texas