<u>**The Adverse Economic Impact of the Proposed "Waters of the US" Rule on Texas Agriculture: The Proposed Rule Will Increase Costs and Uncertainty for Farming and Services in Texas and Rural America**</u>

- The broad expansion of the definition of "Waters of the US" (WOTUS) in the proposed rule would drastically reduce the amount of land available for production and grazing, resulting in a significant reduction and loss of agricultural production in the state. "Expanding jurisdiction under regulation to most ditches, ephemeral streams, and lands containing adjacent waters will increase the land available that can only be farmed under Federal permitting conditions." This would result in a corresponding decrease in available land for production of crops and livestock in the state.[1]

- The regulatory uncertainty of the proposed rule will result in a significant regulatory and economic burden on the agriculture industry in the state by imposing a complex expensive permitting process on farmers and ranchers. EPA estimated the cost of a single permit for non-point source agricultural emissions under the rule to be approximately $57,000.00 (not including the costs of monitoring, reporting, and mitigation—the additional costs of compliance once a permit is obtained).[2]

- The unduly broad definition of WOTUS in the rule triggers other expansive and expensive regulatory provisions under the Clean Water Act (CWA). The CWA has a history of vague, disputed provisions often requiring litigation and expensive legal work to sort through. These provisions include discharge permitting, spill protection, water quality standards, anti-backsliding provisions, and citizen suits. All of the foregoing triggers will increase legal and regulatory expenses, thereby reducing the amount of money previously available for production in the agricultural economy of the state.

- The so-called anti-backsliding provisions do not work well in the agricultural industry for activities such as farming, grazing, crop rotation and innovation. Because farmers must continually change and rotate their crops, a static permit previously issued for a particular piece of land would be difficult if not impossible to comply with after change, thereby reducing

---

[1] (See TESTIMONY-IMPACT OF PROPOSED CHANGES TO CLEAN WATER ACT JURISDICTION RULE ON THE U.S. DEPARTMENT OF AGRICULTURE'S PROGRAMS-- before the House Agriculture Committee, Subcommittee on Conservation and Forestry, by Jonathan Gledhill (2016) (found at: https://agriculture.house.gov/uploadedfiles/gledhill_testimony.pdf)
[2] (See Testimony of Jonathan Gledhill above, at p. 3)

**EXHIBIT**
**5**

production and stifling innovation in a thriving agricultural industry in the state.

- Citizen suits would become available to people under the Clean Water Act. Ordinary citizens could file lawsuits against farmers and ranchers over non-point source emissions into WOTUS from previously unregulated farmlands, increasing legal liability and the legal expenses necessary to defend such lawsuits. Increased legal expenses will have a negative economic impact on farmers and ranchers who previously could invest such resources into production of crops and livestock in the state.[3]

- The inverse condemnation or public taking of agricultural lands without just compensation will make it difficult to continue use of agricultural lands for production in the state. Farmers and ranchers will face the difficult choice of either giving up their lands to the federal government or applying for an expensive permit. Federal jurisdictional lands must be taken out of production. In addition, resulting uncertainty will likely have a chilling effect and reduce overall agricultural production in the state.

- The regulatory uncertainty created by the rule will lead to increased costs of maintaining compliance through increased fines issued to farmers and ranchers in the state for violations of the Clean Water Act, due to jurisdictional uncertainty of just what property is affected and lack of compliance with the new requirements.

- As with any new federal regulation, compliance will impose more expense since training will become necessary to teach farmers and ranchers in the state how to interpret, apply and comply with the new regulation. This additional expense will require time and resources which could previously have been invested in production.

- According to the experts, "to receive a discharge permit for pesticide application adjacent to waters of the US, farmers will need buffer zones or engineering barriers to prevent discharge to these jurisdictional waters."[4] This will make pesticide application more difficult, expensive, and will take previously productive lands out of use, thereby decreasing lands currently available for production and decreasing agricultural production.

---

[3] "On behalf of EPA, citizens can sue potential dischargers and the States for failure to comply with permitted conditions or for failure to establish standards under the CWA. Once most ditches become waters of the United States, citizen groups can file suit against adjacent land owners for unpermitted discharges. Just last month, citizen groups in California gave notices to hundreds of businesses and property owners that they intend to sue these businesses if they are not in compliance with an upcoming CWA stormwater rule." Gledhill Testimony at p. 2.

[4] Gledhill Testimony at p. 2.

- The proposed rule would negatively affect the availability of affordable financing. Because of regulatory uncertainty and its negative effects on farm income, banks likely will charge higher financing fees and could even end loans to farmers and ranchers with lands subject to ongoing jurisdictional uncertainty.
- Regulatory uncertainty created by the proposed rule will lead to a decrease in land values and negatively affect the marketability and sale of such lands. Buyers will be less likely to purchase agricultural lands subject to jurisdictional uncertainty, assuming financing is available for the property.
- The proposed rule will result in an increase in wetland and stream mitigation acreage costs to farmers in the state. Mitigation acreage is required for wetland property subject to jurisdiction based on a 2:1 ratio, i.e., two mitigation acres required for every one acre in production.[5] EPA estimated in 2015 that the rule would result in an increase of over 236 acres of wetland mitigation lands in Texas at a cost of from $15,000.00 to $45,000.00 per acre, using a high-to-low cost range. This additional cost for wetland mitigation did not include over 5,300 linear feed of stream mitigation lands that would be required, adding more cost for compliance with the proposed rule.

---

[5] ***Economic Analysis of the EPA-Army Clean Water Rule,*** *(*Appendix A-" Supplemental Cost Analysis Information" by state) (May 2015).