# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, STATE OF IDAHO, ET AL. | § § § § | |
| *Plaintiffs*, | § § | Civil Action No. 3:23-cv-00017 |
| v. | § § | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL. | § § § | |
| *Defendants*. | § § | |

## STATES' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

The 2023 Rule effectively subjects every droplet of water in Texas and Idaho to the EPA's jurisdiction. Contrary to the assurances Defendants provide, the Rule's "Significant Nexus" test is not a limiting standard—it's a boundless assertion of authority, protected by vagueness, and it strains the English language to even call it a "standard." The Rule plainly exceeds its statutory authority under the CWA. An injunction is thus necessary to protect the States' sovereignty and avoid unnecessary costs in complying with the unlawful Rule.

**A.  The Rule changes the status quo, beyond the CWA, abrogating sovereignty and increasing the States' permitting and mitigation burdens.**

The Federal Agencies argue the Rule does nothing, but they fail to identify the Rule's troublesome provisions in the current definition or *Rapanos* Guidance, which they wrongly contend is the "current implementation" or "pre-2015 regime."[1] Fed. Resp. 5-6. The pre-2015

---

[1] The Guidance is a 13-page document prepared by staff, not a rule. It cannot supersede the definition, which recognizes interstate commerce limitations. Dkt. 40-2 at 4, n.17; *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 96-97 (2015) ("[I]nterpretive rules do not have the force and effect of law.").

regime does not impose the Rule's broad categories or a new vague Significant Nexus Standard that invites arbitrary application. The Federal Agencies inability to quantify the Rule's jurisdictional impact confirms the Rule will operate at the whim of its implementer.[2] And while the Federal Agencies invoke their Economic Analysis's "*de minimis*" determination, the Analysis in fact acknowledges an increase in jurisdiction.[3] The people charged with applying the definition to real projects know this to be the case. Even Intervenor acknowledges that the Rule expands EPA jurisdiction, wringing its hands over wetlands and downstream waters that fall outside CWA governance without the Rule. Intv. Resp. 35-37.

      *i.*      *The Significant Nexus Standard federalizes "tributaries," "wetlands," or "other waters."*

Defendants extol the new Significant Nexus Standard[4] as a backstop for federal jurisdiction over intrastate streams, wetlands, or "other waters." The Federal Agencies may co-opt Justice Kennedy's terminology, but their standard is not the same as his test—it is far broader. And even if the Kennedy test were the right measuring stick (the States argue it is not), the Rule's new Significant Nexus Standard goes much further and contains expansive functions and factors not found in the Guidance.[5] *Compare Rapanos v. United States*, 547 U.S.

---

[2] *Id.* at 15-16. ("cannot estimate what the potential change in jurisdiction with (sic) be for tributaries that are assessed under the significant nexus standard as compared to the primary baseline.").

[3] Ex. 11 at xii (noting "slight and unquantifiable increase in certain resources being found to be jurisdictional" related to changes "the manner of implementing the relatively permanent standard and the significant nexus standard."); *Id.* at 15 (An unknown fraction of this the tributaries evaluated under pre-2015 regime could become jurisdictional); *Id.* at 23 (expecting a "slight increase in the number of adjacent wetlands found to be jurisdictional under the significant nexus standard.").

[4] The Federal Agencies acknowledge that waters made jurisdictional through their Relatively Permanent Standard are "essentially a subset" of those jurisdictional through their Significant Nexus Standard, Fed. Resp. at 9, begging the question of why a separate standard even exists.

[5] The States incorporate Business Plaintiffs' discussion of Significant Nexus Standard's particularities.

715, 778-782 (2006) *with* Dkt. 40-2 at 9 *and* 88 Fed. Reg. at 3119-3130.

Jurisdiction over wetlands separated by roads or structures, on its face, adulterates the term "adjacent." While the Federal Agencies generally codified this category in the Guidance, this controversial implementation is under review in *Sackett*. *See* Dkt. 13 at 25.

The Guidance directs Federal Agencies to assess a tributary together with adjacent wetlands and "consider the flow characteristics and functions of *only the tributary itself* in determining whether such tributary has a significant effect on the chemical, physical, and biological integrity of downstream traditional navigable waters." Dkt. 40-2 at 10 (emphasis added). But under the Rule, the Federal Agencies consider tributaries that flow "indirectly" to a Traditional Water and acknowledge that "indirect" flow may be through "*a number*" of various waters—including non-jurisdictional tributaries, ephemeral streams, impoundments, ditches, or waste treatment systems—so long as they are "part of a tributary *system* that eventually flows to" a Traditional Water. 88 Fed. Reg. at 3080 (emphasis added). The increased breadth of this "indirect flow" is limited only by the vague new Significant Nexus Standard.

The Federal Agencies tout the Rule's exclusion of prior converted cropland and ditches, contending the States should be content with any limit to federal jurisdiction. But the prior converted cropland exclusion is unreliable—any change of use, even temporary, cedes the exemption to the Rule's regime. 88 Fed. Reg. at 3067. And if a ditch meets the new Significant Nexus Standard, it only needs to "contribute flow to" a Traditional Water—federalizing every ditch in the Gulf Coast, drastically impairing transportation projects, notwithstanding the ditch exclusion. *See* Ex. 12 at ¶ 88; *see also* Fed. Reg. at 3080.

  ii. *Interstate waters and impoundments are not jurisdictional in the pre-2015 regime or CWA.*

For interstate waters and impoundments, the Federal Agencies abandoned their case-by-case analyses for *per se* inclusion, no matter the Significant Nexus Standard. The Rule now asserts jurisdiction over *all* interstate waters and wetlands, "regardless of their navigability," but the CWA makes no such allowance. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336, 1355-1360 (S.D. Ga. 2019) (rejecting the same arguments made here and vacating the 2015 Rule due to *per se* jurisdiction over "interstate waters"). The Federal Agencies defend this expansion, saying that CWA predecessors referenced "interstate waters." Fed. Resp. at 20. They ignore that in enacting the CWA, Congress rejected those provisions.[6] Neither the current rule, *Rapanos* Guidance, nor CWA cover isolated streams, ditches, or wetlands that merely cross a state line, plus every wetland or tributary with a Significant Nexus to these minor water features.[7]

Similarly, the Rule envelops all impoundments, even "with no outlet or hydrologic connection."[8] 88 Fed. Reg. at 3077-3078. The Rule covers off-channel reservoirs and those that impounded non-jurisdictional waters when created (if they later become jurisdictional) and those that impound non-jurisdictional waters now (if they were jurisdictional when created). By contrast, the current rule only affects impoundments of waters that are currently used, were used, or susceptible to use, in interstate commerce. Dkt. 40-1. The Guidance adds

---

[6] *Compare* Federal Water Pollution Control Act of 1948, Public Law 80–845, 62 Stat. 1155 (June 30, 1948) (adopting "comprehensive programs for eliminating or reducing the pollution of interstate waters") *with* 33 U.S.C. § 1252 (adopting "comprehensive programs for preventing, reducing, or eliminating the pollution of the navigable waters").

[7] In practice, the Federal Agencies do not even keep records of "interstate waters." Ex. 11 at 14 ("The Rapanos AJD form associated with the pre-2015 regulatory regime, and the associated ORM2 data do not indicate whether a water is jurisdictional as an 'interstate water.'").

[8] At most, the Federal Agencies require a "traceable flowpath" to tributaries when the impoundment was created *or* assessed. No flowpath is required for impounded wetlands. 88 Fed. Reg. at 3078.

nothing about off-channel reservoirs or impoundments of waters not currently jurisdictional.

To justify expansion, the Federal Agencies point to Justice Kennedy's reference to the "absence of hydrologic connection," Fed. Resp. at 21, but the comment referred to wetlands (not impoundments), stating that "it may well be the absence of hydrologic connection (in the sense of interchange of waters) that shows the wetlands' significance.*" Rapanos,* 547 U.S. at 786. An off-channel reservoir does not "interchange." The Federal Agencies' reliance on a footnote in S.*D. Warren Co. v. Maine Bd. of Env't Prot*. is also misplaced. 547 U.S. 370, 379 n.5 (2006). No Court has cited the case for the proposition that impoundments of waters once jurisdictional are jurisdictional until the end of time.

**B.    The harms that will befall the States are real, significant, and irreparable.**

The States' concern with the Rule is neither speculative nor self-inflicted.[9] The Federal Agencies admit more waters are jurisdictional under the Rule than the status quo. And operationalizing a new, 141-page Rule comes with significant burdens that cannot be compensated when the Rule is held invalid.

   *i.    The States' sovereignty interest is constitutionally protected and infringed by the Rule.*

Intrastate waters are "the quintessential" zone of state sovereignty. *FERC v. Mississippi*, 456 U.S. 742, 767 n.30 (1982); *see also Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Engineers*; 531 U.S. 159, 174 (2001) (*SWANCC*); *Perry v. Haines,* 191 U.S. 17, 52 (1903). The

---

[9] The Federal Agencies dispute standing, citing *Crane v. Johnson*, 783 F.3d 244 (5th Cir. 2015). In *Crane*, Mississippi failed to produce evidence about DACA's costs, producing only a decade old study about illegal immigration. Here, specific declarations from knowledgeable employees explain the impact on important state programs. *See Texas v. Biden*, 20 F.4th 928, 971 (5th Cir. 2021), rev'd and remanded on other grounds, 213 L. Ed. 2d 956 (2022) (rejecting *Crane* and finding "Texas's standing is robustly supported by just such big-picture evidence" and that a "large-scale policy" is "amenable to challenge using large-scale statistics and figures, rather than highly specific individualized documents.").

Federal Agencies argue that federal regulation for pollution control can *never* infringe on state sovereignty, citing *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 284-93 (1981).[10] But *Hodel* discussed Tenth Amendment limits on *congressional power* to pre-empt or displace state regulation of private activities affecting *interstate commerce. Id.* at 289–90. By comparison, the Rule extends federal authority beyond limits set by Congress, which expressly recognized primary responsibilities and rights of States to regulate this field. 33 U.S.C. § 1251(b). The Rule also "replac[es]" the current interstate commerce limits in the definition with the Significant Nexus Standard. 88 Fed. Reg. at 3029.

The Federal Agencies claim, without authority, that sovereignty harm can be compensated "in the ordinary course of litigation," but fail to explain how a state may receive recompense for loss of control within its borders—much less the costs to operationalize a rule that is later held invalid. The Fifth Circuit has recognized sovereignty harm as irreparable, as have other courts when rules exceed the CWA. *See* Dkt. 13 at 21-22.

    *ii.       The expansion of federal jurisdiction irreparably harms the States' projects.*

TxDOT estimates a 40% increase in authorizations over the next five years and a $3 million increase in mitigation costs per year. Dkt. 13-1, *see also* Dkt. 34-3. The States' real assets will lose value, Dkts. 13-2; 34-2, and agriculture interests (which the States must advance) will suffer. Tex. Agric. Code §§ 12.002, 12.027; Idaho Code § 22-103(3); Dkts. 13-3, 34-1.

Even if the Federal Agencies do not wield their expanded jurisdiction, third parties may (and regularly do) enforce the CWA and challenge jurisdictional determinations that depart

---

[10] The Federal Agencies mistakenly claim Idaho does not assert a threat to its sovereignty or irreparable harm. This is not true. *See* Dkt. 30 at ¶ 60, Dkt. 34, Dkt. 34-1, 34-2, 34-3, 34-4.

from the Rule. *See, e.g., Bayou City Waterkeeper v. U.S. Army Corps of Engineers*, No. 3:20-CV-00255, 2022 WL 4477309, (S.D. Tex. Sept. 26, 2022). For example, Idaho was permitted to expand U.S. Highway 95, but after citizen litigation, USACE revoked the permits, sending the project to square one. *See Paradise Ridge Def. Coalition v. United States Army Corps of* Engineers, No. 1:22-cv-00122-REP (D. Idaho). The Rule invites more such challenges. Dkt. 34-3 ¶ 9.

       *iii.      Implementation of the Rule will independently and irreparably harm the States.*

In addition to the harms attendant the expansion of CWA jurisdiction, applying the new Significant Nexus Standard also irreparably harms the States. Dkt. 13-1 at ¶ 8. Due to its vagueness, TxDOT expects 3,000 projects in 2023 to require a 20% increase in labor hours. USACE's "free" jurisdictional determinations won't cure the States' injuries because it is still very expensive and very slow to get such determinations. TxDOT spends $35,000 to $150,000 for an approved jurisdictional determination, each of which takes approximately one year.[11] Ex. 12. In the meantime, roads will continue to deteriorate. Another injury comes by way of the new "tools" required to begin unraveling the new standards, which will require purchasing, training, evaluation, and guidance. Ex. 12 at ¶ 2-3. The States' other agencies are all similarly responsible. Dkt. 13-2 at ¶¶ 4, 7, 13-3 at ¶ 4, 13-4 at ¶ 5, 13-5 at ¶ 8.

Unlike in *Div. 80, LLC v. Garland*, where a store began selling firearm receivers after the practice became regulated, the States' costs are neither voluntary nor self-inflicted. 2022 WL 3648454, at *5 (S.D. Tex. Aug. 23, 2022). The only way to avoid harm is to either forego needed infrastructure or proceed without a jurisdictional determination and pray. Ex. 12 at

---

[11] The Federal Agencies say this figure "strains credulity" and TxDOT must have confused its costs. Fed. Resp. at 38, n 12. But state agencies keep close track of their budget impacts. The Federal Agencies in D.C. may be out of touch with the real impacts of the Rule in Texas and Idaho.

¶ 4. This is not self-inflicted harm. *See Texas v. United States,* 809 F.3d 134, 158 (5th Cir. 2015).

**C.     The States are likely to succeed on their claims.**

The Rule changes the status quo and exceeds the CWA. *See* Part A. The States are thus likely to succeed on their Administrative Procedure Act challenges. For the additional claims:

*i.     The major questions doctrine governs the Rule's exorbitant expansion of jurisdiction.*

The major questions doctrine presumes Congress "intends to make major policy decisions itself, not leave those decisions to agencies." *W. Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2609 (2022). It demands "exceedingly clear" authorization "to significantly alter the balance between federal and state power and the power of the Government over private property." *Ala. Ass'n of Realtors v. Dep't of Health and Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021). The Rule destroys the balance by asserting jurisdiction over interstate waters, impoundments, and anywhere the new Significant Nexus Standard is applied. This expansion of jurisdiction is of great "economic and political significance." *Ala. Ass'n of Realtors* at 2608.

The Federal Agencies wrongly conclude the doctrine does not apply because the Rule codifies the pre-2015 regime. Not so—during that era, Congress thrice rejected these expansive definitions. S. 787, 111th Cong (2009) (defining "waters of the United States" to include "intrastate waters"); H.R. 2421, 110th Cong. (2007); H.R. 962, 108th Cong. (2003). And the U.S. House of Representatives passed a resolution disapproving of this Rule. H.J.Res. 27, 118th Cong. (2023). Adoption of a program Congress "conspicuously and repeatedly declined to enact itself," demands "skepticism." *W. Virginia*, 142 S. Ct. at 2610; *Alabama Ass'n*

*of Realtors*, 141 S. Ct. at 2486–87.[12]

The Federal Agencies cannot dodge the major questions doctrine by relying on their authority to interpret a term of their regulatory jurisdiction.[13] The Rule swallows the CWA's mandate to "recognize, preserve, and protect the *primary* responsibilities and rights of States." 33 U.S.C. § 1251(b). The CWA's clear language forbids the Rule's expansion of jurisdiction.

### ii. *The Rule exceeds regulation of interstate commerce, violating the Tenth Amendment.*

Because the Rule exceeds the CWA by reading "navigable" out and ignoring the CWA's express reservation of historical State authority, it also violates the Tenth Amendment. "Virtually all water, polluted or not, eventually makes its way to navigable water." *Cnty. of Maui, Hawaii v. Hawaii Wildlife Fund*, 140 S. Ct. 1462, 1470 (2020). Affixing a boundary of federal waters is necessary to avoid reading the CWA to violate the Tenth Amendment. *See SWANCC*, 531 U.S. 159, 174 (2001) (recognizing state primacy "to avoid the significant constitutional and federalism questions"); *see also Rapanos*, 547 U.S. at 737. Congress set a line at navigable waters, and the Rule blows right past it. *See* n.4, *supra*. Expanding CWA jurisdiction over intrastate waters violates the Tenth Amendment. *See SWANCC*, 531 U.S. at 174.

### iii. *The Rule is unconstitutionally vague.*

Defendants confuse page count for clarity. The new Significant Nexus Standard and

---

[12] The Federal Agencies try to avoid major questions claiming insufficient comments. Fed. Resp. at 25, n. 9. But the *West Virginia* case was decided months *after* the comment period. In any event, Texas raised the issue in a comment, citing *Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 324 (2014), a case in the body of law cited in *West Virginia*. Dkt. 32-4 at 5. And the Federal Agencies acknowledge many commenters concerned the rule "would exceed the agencies' statutory authority." 88 Fed. Reg 3052.

[13] Insofar as the CWA's ambiguity might invite *Chevron* deference, "the agency's reading must fall "within the bounds of reasonable interpretation." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2416 (2019) (citing *Arlington v. F.C.C.*, 569 U.S. 290, 296 (2013). No deference is available given how far the Rule strays.

its factors and functions will cause arbitrary and inconsistent application across projects and USACE districts (four in Texas and three in Idaho). *See* Dkt. 13-1 at ¶ 8; Ex. 12. The Ninth Circuit's decision in *United States v. Lucero*, 989 F.3d 1088 (9th Cir. 2021), is no help to Federal Agencies. The vagueness challenge rejection for "significant nexus" addressed Justice Kennedy's use of the term. *Id.* at 1103. But again, the Rule remakes that standard.

D.   **The equities and public interest are best served by injunction.**

As with the 2015 Rule, the balance of equities and public interest strongly favor an injunction here.[14] Intervenor argues that under the current implementation without the Rule, certain waters and wetlands lack CWA protections. Intv. Resp. at 36.[15] But the Federal Agencies, clinging to their litigation position that the Rule changes nothing, contend that the Rule's only benefit is in codifying the Guidance and call this benefit "slight." Fed. Resp. at 38. Yet parsing 141 pages is not a straightforward or efficient task, and although the current implementation leaves much to be desired, it is the devil that is known to the States and regulated community. *See* Dkt 13-1 at ¶ 9. And considering that the Rule is unlikely to survive review because it exceeds the scope of the CWA, operationalizing new standards throughout the Rule will be a wasted effort, as this Court previously found. *Texas v. United States Env't. Prot. Agency*, No. 3:15-CV-00162, 2018 WL 4518230, at *1 (S.D. Tex. Sept. 12, 2018). The Federal Agencies waited over a year between proposing and adopting this Rule—there is no harm in postponing implementation while the Court assesses the Rule.

---

[14] The States incorporate Industry Plaintiffs' discussion of the scope of injunction.

[15] Intervenor makes much of a 20-year-old Texas Parks and Wildlife Department letter—offered on a different rule in the pre-*Rapanos* era—that simply recognizes that the Department (which is not Texas's environmental regulator) is limited in its use of CWA tools outside of the CWA's jurisdiction. Nothing in that letter addresses the myriad definitions at issue here.

## PRAYER

The States respectfully request that the Court grant their Motion for Preliminary Injunction, enjoining the effectiveness, implementation, and enforcement of the final rule titled Revised Definition of "Waters of the United States," 88 Fed. Reg. 3004 (Jan. 18, 2023), pending further order of the Court, and to all other relief to which they may be entitled.

Respectfully submitted,

| | |
|---|---|
| KEN PAXTON<br>Attorney General of Texas | */s/ J. Amber Ahmed*<br>J. AMBER AHMED<br>*Attorney-in-Charge* |
| BRENT WEBSTER<br>First Assistant Attorney General | Assistant Attorney General<br>State Bar No. 24080756<br>Southern District No. 3135176 |
| GRANT DORFMAN<br>Deputy First Assistant Attorney General | amber.ahmed@oag.texas.gov<br><br>LOGAN HARRELL<br>Assistant Attorney General |
| AARON F. REITZ<br>Deputy Attorney General for Legal Strategy | State Bar No. 24106054<br>*PRO HAC VICE*<br>logan.harrell@oag.texas.gov |
| SHAWN COWLES<br>Deputy Attorney General for Civil Litigation | OFFICE OF THE ATTORNEY GENERAL<br>Environmental Protection Division<br>P. O. Box 12548, MC-066 |
| PRISCILLA M. HUBENAK<br>Chief, Environmental Protection Division | Austin, Texas 78711-2548<br>Tel: (512) 463-2012<br>Fax: (512) 320-0911 |
| | **COUNSEL FOR STATE OF TEXAS PLAINTIFFS** |

| | |
|---|---|
| RAÚL R. LABRADOR<br>Attorney General of Idaho | /s/ David Dewhirst<br>DAVID DEWHIRST<br>Chief Deputy Attorney General |
| THEODORE WOLD<br>Solicitor General | PRO HAC VICE<br>Idaho Bar No. 12141<br>Office of the Attorney General<br>P.O. Box 83720 |
| JOSHUA N. TURNER<br>Deputy Solicitor General<br>PRO HAC VICE<br>MN Bar No. 0400279<br>josh.turner@ag.idaho.gov | Boise, Idaho 83720-0010<br>Tel: (208) 334-2400<br>Fax: (208) 854-8071<br>david.dewhirst@ag.idaho.gov |
| SCOTT L. CAMPBELL<br>Deputy Attorney General<br>Chief, Energy and Natural<br>Resources Division | |
| LINCOLN DAVIS WILSON<br>Deputy Attorney General<br>PRO HAC VICE<br>Idaho Bar No. 11860<br>lincoln.wilson@ag.idaho.gov<br>Chief, Civil Litigation and<br>Constitutional Defense Division | |

***COUNSEL FOR STATE OF IDAHO***

## CERTIFICATE OF SERVICE

I certify that on March 10, 2023, a copy of the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on all attorneys in this case.

/s/ J. Amber Ahmed
J. AMBER AHMED
Assistant Attorney General