

**U.S. Department of Justice**

Environment and Natural Resources Division

---

March 16, 2023

**<u>VIA ECF</u>**

The Hon. Jeffrey Vincent Brown
United States District Judge
601 Rosenberg Avenue
Galveston, TX 77550

    Re:    *State of Texas v. EPA*, No. 3:23-cv-17 (S.D. Tex.)

Dear Judge Brown:

    As permitted by the Court, we address Plaintiffs' rebuttal at yesterday's hearing. Bayou City Waterkeeper joins in this letter.

    First, the Rule is substantively similar to but clearer than the status quo regime, which includes the *Rapanos* Guidance. As to interstate waters, the Rule makes no substantive changes and continues to cover such waters (and upstream waters with the requisite connection to them). *Compare* 33 C.F.R. § 328.3 (2014) (1986 Regulations), ECF No. 40-1, *with* the Rule's regulatory text, ECF No. 40-4; *see also Rapanos* Guidance, ECF No. 40-2 at 4 n.18; 38 Fed. Reg. 13528 (May 22, 1973) (historic CWA coverage of interstate waters and their tributaries and adjacent wetlands). Similarly, the Rule's description of tributaries, including that they may sometimes flow "indirectly" to downstream waters, is consistent with the status quo (and the 2020 Rule). ECF No. 40-2 at 6 n.24; 85 Fed. Reg. 22251 (Apr. 21, 2020). Likewise, the "significant nexus" standard is part of both the status quo regime and the Rule; the Rule provides more clarity for implementing this standard. For example, the *Rapanos* Guidance discusses *non*-exclusive functions and factors that could be considered in determining whether an effect is "more than speculative or insubstantial," including "volume, duration, and frequency of flow" and "proximity to the traditional navigable water." ECF 40-2 at 6, 8-11. The Rule contains a nearly identical list of *exclusive* factors and functions and clarifies that "more than speculative or insubstantial" requires a "material influence." *See* ECF No. 40 at 33. The Rule adds further certainty by codifying exclusions that existed in practice but do not appear in the text of the 1986 Regulations, such as for certain ditches (which drain dry land and do not, as Plaintiffs misstated, flow upstream, Tr. 114:12-14).

    Second, regarding standing and irreparable harm, *all* of Plaintiffs' declarations are too conclusory and conjectural to support injunctive relief. Industry cannot excuse this shortfall on the grounds that it "do[es]n't know what the rule means" and "can't figure it out," Tr. 126:10-11. Plaintiffs' alleged lack of comprehension does not entitle them to extraordinary relief, especially where they simply misstate the Rule's provisions. Tr. 101:18-102:9; ECF No. 39 at 10-11. In any event, nothing about the Rule's alleged vagueness prevents Plaintiffs from providing specific information about waters they

claim "may" be newly jurisdictional under the Rule and their proposed pollutant-discharging activities in or near those waters. *None* of the declarations provides sufficient factual detail for the Court to ascertain whether and to what extent any alleged irreparable harm *from the Rule* (as opposed to the status quo) has been shown. Questions of applicability are inherent in rulemaking; this normal degree of uncertainty does not relieve Plaintiffs of carrying their burden to establish clear and substantial irreparable harm.

Conversely, the Agencies' Economic Analysis shows that regulatory costs to implement the Rule are a *de minimis* increase over the existing status quo. Economic Analysis ("EA")[1] at 40. After assessing more than 200,000 jurisdictional analyses over 10 years, the agencies concluded that very few features might be considered differently under the jurisdictional standards in the final rule, as only a small proportion of resources are even *potentially* implicated by the changes: 0.25% of tributaries (EA at 15-16); 0.25% of lakes/ponds (EA at 18-19); 0.05% of wetlands (EA at 23); and so few waters assessed under paragraph (a)(5) that the analysis was not statistically viable (EA at 26-27). Of these numbers, an unknown percentage would actually be affected. Plaintiffs have not proffered specific facts showing that they, or identified members of Industry, will be affected.

Third, Plaintiffs would have the opportunity to press their arguments concerning the Rule in an as-applied challenge to a jurisdictional determination or permit decision. *Corps v. Hawkes Co.*, 578 U.S. 590, 598 (2016). The APA permits just this sort of challenge. An as-applied challenge may also cure Plaintiffs' ripeness problem. As it stands, Plaintiffs' complaint is unripe because they have set forth no concrete action applying the regulation in a manner that will affect them. *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003); *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007).

Lastly, there is no basis for universal relief, even if there were for any relief at all. Counsel acknowledged (Tr. 41:15) that nationwide relief is not being sought in Kentucky, nor are plaintiff States pursuing such relief in North Dakota. Texas and Idaho make no argument why relief outside their borders is "necessary to prevent irreparable injury" to them. 5 U.S.C. § 705. Industry, which must show harm independent of the States to obtain relief broader than the States' borders, offers only conclusory speculation from a few members that they could be harmed by the Rule—and no concrete examples of harm *anywhere*, let alone outside of Texas or Idaho. Finally, Industry's concerns about the administrability of non-universal relief ignore that, under the principle of party-specific relief, any (unwarranted) injunction in its favor would inure to the benefit of its *members*, not specific *waters*. *See Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 599-601 (2020) (Gorsuch, J., concurring) (criticizing "injunctions of 'nationwide,' 'universal,'" or 'cosmic' scope'"); *see also Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) (requiring a more specific uniformity mandate for nationwide relief).

---

[1] Available at: https://www.regulations.gov/document/EPA-HQ-OW-2021-0602-2489.

Respectfully submitted,

TODD KIM
Assistant Attorney General
ENVIRONMENT AND NATURAL RESOURCES DIVISION

*Of Counsel:*
Karyn I. Wendelowski
Elise O'Dea
Environmental Protection Agency

Daniel Inkelas
Erica Zilioli
U.S. Army Corps of Engineers

/s/ Sarah Izfar (signed with permission of Andrew J. Doyle)
ANDREW J. DOYLE, FL Bar No. 84948;
S.D. Tex. Bar No. 1143161
*Attorney-in-Charge*
SONYA J. SHEA, CA Bar No. 305917;
S.D. Tex. Bar. No. 3835754
SARAH IZFAR, DC Bar No. 1017796;
S.D. Tex. Bar. No. 3528936
HUBERT T. LEE, NY Bar No. 4992145;
S.D. Tex. Bar No. 3835753
ELLIOT HIGGINS, NY Bar No. 5737903;
S.D. Tex. Bar No. 3696295
United States Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Tel: (415) 744-6469 (Doyle)
Tel: (303) 844-7231 (Shea)
Tel: (202) 305-0490 (Izfar)
Tel: (202) 514-1806 (Lee)
Tel: (202) 514-3144 (Higgins)
Fax: (202) 514-8865
andrew.doyle@usdoj.gov
sonya.shea@usdoj.gov
sarah.izfar@usdoj.gov
hubert.lee@usdoj.gov
elliot.higgins@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2023, I filed the foregoing using the Court's CM/ECF system, which will electronically serve all counsel of record registered to use the CM/ECF system.

    /s/ *Sarah Izfar*