**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | No. 3:23-cv-17 (consolidated |
| | § | with No. 3:23-cv-20) |
| | § | |
| UNITED STATES ENVIRONMENTAL | § | |
| PROTECTION AGENCY, et al., | § | |
| | § | |
| Defendants, | § | |
| | § | |
| BAYOU CITY WATERKEEPER, | § | |
| | § | |
| Intervenor-Defendant. | § | |

**FEDERAL DEFENDANTS' COMBINED MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTIONS FOR SUMMARY
JUDGMENT**

# TABLE OF CONTENTS

Table of Contents.................................................................................................. i

Table of Authorities ........................................................................................... iv

Glossary ............................................................................................................. xiv

Introduction ......................................................................................................... 1

Background ........................................................................................................... 2

Nature and Stage of the Proceedings.................................................................. 6

Standard for Decision ......................................................................................... 6

Summary of the Argument .................................................................................. 7

Argument .............................................................................................................. 8

    I.     Plaintiffs lack standing. ................................................................... 8

          A.    Business Plaintiffs' purported Article III injuries are
               unsubstantiated and not cognizable as a matter of law. ................... 9

          B.    State Plaintiffs' purported Article III injuries are similarly
               speculative and unsupported. ......................................................... 11

          C.    On a claim-by-claim basis, Plaintiffs do not have standing to
               bring any of their individual challenges.......................................... 13

               1.    Plaintiffs fail to demonstrate standing to challenge
                    each jurisdictional category in the Amended
                    Regulations........................................................................... 14

               2.    Plaintiffs fail to demonstrate standing to challenge the
                    Amended Regulations' ditch exclusion. ............................... 18

                 3.    Plaintiffs fail to demonstrate standing for their
                    remaining constitutional and APA challenges. ..................... 20

    II.    The case is not ripe for review. ................................................... 21

A. Plaintiffs' claims are not fit for review. ............................................22

 1. Plaintiffs' specific challenges to each jurisdictional category are not fit for review...............................22

 2. Plaintiffs' vagueness challenges are not fit for review. ........25

B. Plaintiffs will not suffer hardship if judicial review is delayed. ......26

III. The Amended Regulations' jurisdictional categories are lawful. ..............28

A. Coverage of interstate waters is appropriate. ...................................28

 1. The Commerce Clause provides authority to cover interstate waters.....................................................28

 2. The Clean Water Act covers interstate waters. ....................30

B. The Amended Regulations' coverage of impoundments is lawful..............................................................................35

C. The Amended Regulations reasonably include relatively permanent tributaries and exclude non-relatively permanent ditches..............................................................................37

 1. The Amended Regulations' relatively permanent requirement is the same as *Sackett*'s....................................38

 2. The Amended Regulations' treatment of ditches is reasonable..............................................................42

D. The regulatory coverage of adjacent wetlands accords with *Sackett*. ..........................................................................44

E. The intrastate lakes and ponds category is lawful............................48

IV. The Amended Regulations should also be upheld for broader reasons. ..................................................................................49

A. The Amended Regulations accord with *Sackett*...............................49

B. Congress lawfully delegated the Agencies rulemaking authority. .........................................................................50

C.   The major questions doctrine is inapplicable...................................52

D.   The Amended Regulations are permissible under the Commerce Clause and do not raise Tenth Amendment concerns...........................................................................53

E.   The Amended Regulations are not unconstitutionally vague. .........55

V.   The Agencies reasonably invoked the APA's good cause exception. ........57

VI.   Any remedy should be narrowly tailored. ...................................................59

Conclusion ..............................................................................................................60

# TABLE OF AUTHORITIES

## Cases

*Action on Smoking & Health v. Civil Aeronautics Bd.*,
    713 F.2d 795 (D.C. Cir. 1983)..................................................................59

*Albernaz v. United States*,
    450 U.S. 333 (1981) .......................................................................50

*Am. Fed'n of Gov't Emps., AFL-CIO v. Block*,
    655 F.2d 1153 (D.C. Cir. 1981).................................................................58

*Am. Hosp. Ass'n v. Becerra*,
    142 S. Ct. 1896 (2022)...........................................................................49

*Arkansas v. Oklahoma*,
    503 U.S. 91 (1992) .....................................................................29, 32

*Avoyelles Sportsmen's League, Inc. v. Marsh*,
    715 F.2d 897 (5th Cir. 1983)....................................................................40

*B&B Insulation, Inc. v. Occupational Safety & Health Rev. Comm'n*,
    583 F.2d 1364 (5th Cir. 1978)...................................................................26

*Baylor Cnty. Hosp. Dist. v. Price*,
    850 F.3d 257 (5th Cir. 2017) ................................................................7, 50

*Bayou Lawn & Landscape Servs. v. Johnson*,
    173 F. Supp. 3d 1271 (N.D. Fla. 2016) .......................................................58

*Beckles v. United States*,
    580 U.S. 256 (2017) ...........................................................................56

*Brunett v. Convergent Outsourcing, Inc.*,
    982 F.3d 1067 (7th Cir. 2020) ..................................................................11

*Cent. & S. W. Servs., Inc. v. EPA*,
    220 F.3d 683 (5th Cir. 2000) ...................................................................60

*Chevron, U.S.A. Inc., v. NRDC*,
    467 U.S. 837 (1984) ........................................................................7, 50

iv

*City of Milwaukee v. Illinois*,
    451 U.S. 304 (1981) ................................................................................. 30, 32, 34

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ......................................................................... 10, 15, 16, 19

*Cnty. of Maui v. Haw. Wildlife Fund*,
    140 S. Ct. 1462 (2020)............................................................................... 40, 41

*Ctr. For Biological Diversity v. EPA* ("*CBD*"),
    937 F.3d 533 (5th Cir. 2019) ..................................................... 6, 9, 13, 17, 18

*Data Mktg. P'ship, LP v. U.S. Dep't of Labor*,
    45 F.4th 846 (5th Cir. 2022) ............................................................................ 60

*Davis v. FEC*,
    554 U.S. 724 (2008) ............................................................................... 8, 10, 13

*Econ. Light & Power Co. v. United States*,
    256 U.S. 113 (1921) .......................................................................................... 35

*E.T. v. Paxton*,
    41 F.4th 709 (5th Cir. 2022) .............................................................................. 8

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) .......................................................................................... 56

*Freier v. Westinghouse Elec. Corp.*,
    303 F.3d 176 (2d Cir. 2002) ............................................................................. 29

*Georgia v. Wheeler*,
    418 F. Supp. 3d 1336 (S.D. Ga. 2019) ........................................................... 31

*Gill v. Whitford*,
    585 U.S. 48 (2018) ............................................................................................ 59

*Great Am. Houseboat Co. v. United States*,
    780 F.2d 741 (9th Cir. 1986) ........................................................................... 26

*Gundy v. United States*,
    139 S. Ct. 2116 (2019)...................................................................................... 51

*Heart of Atlanta Motel, Inc. v. United States*,
   379 U.S. 241 (1964) ................................................................. 53

*Hodel v. Va. Surface Mining & Reclamation Ass'n*,
   452 U.S. 264 (1981) ................................................................. 29

*Hollis v. Lynch*,
   827 F.3d 436 (5th Cir. 2016) .................................................... 8

*Huawei Techs. USA, Inc. v. FCC*,
   2 F.4th 421 (5th Cir. 2021) .............................................. 7, 55

*Illinois v. City of Milwaukee*,
   406 U.S. 91 (1972) ................................................................... 30

*J & B Enters., Inc. v. City of Jackson*,
   152 F.3d 362 (5th Cir. 1998) .................................................. 56

*Jonibach Mgmt. Tr. v. Wartburg Enters., Inc.*,
   750 F.3d 486 (5th Cir. 2014) .................................................. 50

*Kaiser Aetna v. United States*,
   444 U.S. 164 (1979) ................................................................. 32

*La. Dep't of Wildlife & Fisheries v. Nat'l Oceanic & Atmospheric Admin.*,
   70 F.4th 872 (5th Cir. 2023) ................................... 9, 11, 12, 13

*Lewis v. United States*,
   88 F.4th 1073 (5th Cir. 2023) .......................................... 43, 44

*Lopez v. City of Hous.*,
   617 F.3d 336 (5th Cir. 2010) .................................................. 22

*McChesney v. Petersen*,
   275 F. Supp. 3d 1123 (D. Neb. 2016),
   *aff'd sub nom. McChesney v. Fed. Election Comm'n*,
   900 F.3d 578 (8th Cir. 2018) .................................................. 57

*Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*,
   60 F.4th 956 (5th Cir. 2023) .................................................. 49

*Midship Pipeline Co., L.L.C. v. FERC*,
   45 F.4th 867 (5th Cir. 2022) .................................................. 26

*Moore v. Hosemann*,
   591 F.3d 741 (5th Cir. 2009) ........................................................................ 8

*NAACP v. City of Kyle*,
   626 F.3d 233 (5th Cir. 2010) ................................................................. 9, 20

*Nat'l Park Hosp. Ass'n v. Dep't of Interior* ("*NPHA*"),
   538 U.S. 803 (2003) ............................................................................. 23, 27

*Nat'l Press Photographers Ass'n v. McCraw*,
   90 F.4th 770 (5th Cir. 2024) ................................................................. 20, 21

*NRDC v. EPA*,
   559 F.3d 561 (D.C. Cir. 2009) .............................................................. 17, 25

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
   523 U.S. 726 (1998) ..................................................................................... 24

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*,
   45 F.4th 816 (5th Cir. 2022) ........................................................................ 10

*Racing Enthusiasts & Suppliers Coal. v. EPA*,
   45 F.4th 353 (D.C. Cir. 2022) ..................................................................... 18

*Rapanos v. United States*,
   547 U.S. 715 (2006) ............... 3, 4, 10, 29, 30, 31, 32, 35, 38, 40-45, 47, 49, 51, 52, 55

*Reno v. Am. Civil Liberties Union*,
   521 U.S. 844 (1997) ..................................................................................... 59

*Reno v. Flores*,
   507 U.S. 292 (1993) ..................................................................... 7, 21, 25, 28

*Roark & Hardee LP v. City of Austin*,
   522 F.3d 533 (5th Cir. 2008) ............................................... 6, 25, 28, 55, 57

*Sackett v. EPA*,
   598 U.S. 651 (2023) ..................... 1, 5, 10, 29-32, 36, 38, 39, 42, 44-46, 49, 51, 54, 56

*S. Fla. Water Mgmt. Dist. v. Miccosukee Tribe of Indians*,
   541 U.S. 95 (2004) ....................................................................................... 23

*S.D. Warren Co. v. Me. Bd. of Env't Prot.*,
    547 U.S. 370 (2006) ..................................................................... 35

*S.F. Baykeeper v. City of Sunnyvale*,
    No. 20-cv-00824, 2023 WL 8587610 (N.D. Cal. Dec. 11, 2023) ........................... 43, 47

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947) ..................................................................... 40

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) ..................................................................... 7

*Socialist Labor Party v. Gilligan*,
    406 U.S. 583 (1972) ..................................................................... 26

*Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs* ("*SWANCC*"),
    531 U.S. 159 (2001) ..................................................... 3, 29, 30, 31, 32, 52, 54

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ..................................................................... 14, 16

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ..................................................................... 21

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ..................................................................... 21

*Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*,
    413 F.3d 479 (5th Cir. 2005) ............................................................. 22, 24, 25

*Texas v. United States*,
    497 F.3d 491 (5th Cir. 2007) ............................................................. 22, 26

*Texas v. United States*,
    No. 1:18-CV-00068, 2023 WL 5951196 (S.D. Tex. Sept. 13, 2023) ........................... 59

*Toilet Goods Ass'n, Inc. v. Gardner*,
    387 U.S. 158 (1967) ..................................................................... 26, 27

*Town of Chester v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017) ..................................................................... 8

*Tri-Realty Co. v. Ursinus Coll.*,
   124 F. Supp. 3d 418 (E.D. Pa. 2015)............................................................43

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
   578 U.S. 590 (2016) ....................................................................................28

*United States v. Andrews*,
   No. 3:20-cv-01300, 2023 WL 4361227 (D. Conn. June 12, 2023)..............47

*United States v. Arrieta*,
   862 F.3d 512 (5th Cir. 2017) ......................................................................50

*United States v. Brace*,
   No. 1:17-cv-00006, 2019 WL 3778394 (W.D. Pa. Aug. 12, 2019),
   *aff'd on other grounds*, 1 F.4th 137 (3d Cir. 2021) ......................................47

*United States v. Brooks*,
   681 F.3d 678 (5th Cir. 2012) ......................................................................25

*United States v. Cundiff*,
   555 F.3d 200 (6th Cir. 2009) ......................................................................48

*United States v. Donovan*,
   No. 96-484, 2010 WL 3000058 (D. Del. July 23, 2010),
   *report and recommendation adopted*, 2010 WL 3614647 (D. Del. Sept. 10, 2010),
   *aff'd*, 661 F.3d 174 (3d Cir. 2011)...............................................................47

*United States v. Ho*,
   311 F.3d 589 (5th Cir. 2002) ......................................................................29

*United States v. Johnson*,
   632 F.3d 912 (5th Cir. 2011) ..................................................................6, 57

*United States v. Lanier*,
   520 U.S. 259 (1997) ....................................................................................56

*United States v. Lopez*,
   514 U.S. 549 (1995) ....................................................................................29

*United States v. Lucas*,
   516 F.3d 316 (5th Cir. 2008) ..........................................................45, 48, 55

*United States v. Lucero*,
   989 F.3d 1088 (9th Cir. 2021) ................................................................... 55

*United States v. Mlaskoch*,
   No. 10-cv-2669, 2014 WL 1281523 (D. Minn. Mar. 31, 2014) .................................. 47

*United States v. Morison*,
   844 F.2d 1057 (4th Cir. 1988) ................................................................... 56

*United States v. Nat'l Dairy Prods. Corp.*,
   372 U.S. 29 (1963) ................................................................................ 55

*United States v. Riverside Bayview Homes*,
   474 U.S. 121 (1985) ........................................................ 3, 30, 31, 46, 51, 52

*United States v. Texas*,
   599 U.S. 670 (2023) .............................................................................. 60

*United States v. Williams*,
   553 U.S. 285 (2008) .......................................................................... 56, 57

*Util. Solid Waste Activities Grp. v. EPA*,
   236 F.3d 749 (D.C. Cir. 2001) ............................................................... 58, 59

*VanDerStok v. Garland*,
   86 F.4th 179 (5th Cir. 2023) .................................................................... 60

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982) .......................................................................... 25, 57

*ViroPharma, Inc. v. Hamburg*,
   777 F. Supp. 2d 140 (D.D.C. 2011), *aff'd*, 471 F. App'x 1 (D.C. Cir. 2012) .............. 10

*Wash. State Grange v. Wash. State Republican Party*,
   552 U.S. 442 (2008) .......................................................................... 21, 25

*Washington v. U.S. Dep't of Health & Hum. Servs.*,
   482 F. Supp. 3d 1104 (W.D. Wash. 2020) ..................................................... 11, 12

*West Virginia v. EPA*,
   597 U.S. 697 (2022) .......................................................................... 52, 53

x

*West Virginia v. EPA*,
   669 F. Supp. 3d 781 (D.N.D. 2023) ............................................................ 5

*West Virginia v. U.S. Dep't of Health & Hum. Servs.*,
   145 F. Supp. 3d 94 (D.D.C. 2015), *aff'd sub nom. W. Va. ex rel. Morrisey v. U.S. Dep't of Health & Hum. Servs.*, 827 F.3d 81 (D.C. Cir. 2016) ................................ 21

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ............................................................................... 50

*Wickard v. Filburn*,
   317 U.S. 111 (1942) ............................................................................... 53

*Yogi Metals Grp. Inc. v. Garland*,
   567 F. Supp. 3d 793 (S.D. Tex. 2021), *aff'd*, 38 F.4th 455 (5th Cir. 2022) .................. 6

**Constitution**

U.S. Const. art. I,  § 8 ....................................................................................... 29

**Statutes**

5 U.S.C. § 553(b)(4)(B) .............................................................................. 57, 59

5 U.S.C. § 706 ........................................................................................... 59

33 U.S.C. § 466i(e) (1952) ............................................................................ 33

33 U.S.C. § 1173(e) (1970) ........................................................................... 34

33 U.S.C. § 1251(a) ........................................................................ 2, 32, 51, 53

33 U.S.C. § 1251(b) ................................................................................... 51

33 U.S.C. § 1253 ...................................................................................... 32

33 U.S.C. § 1311 ...................................................................................... 18

33 U.S.C. § 1311(a) ....................................................................... 2, 34, 53

33 U.S.C. § 1313(a)-(d) ................................................................................ 2

33 U.S.C. § 1313(a)(1) ................................................................................ 33

33 U.S.C. § 1313(c)(2)(A) ....................................................................... 33

33 U.S.C. § 1313(c)(4) .............................................................................. 33

33 U.S.C. § 1319(a)-(b) ............................................................................ 36

33 U.S.C. § 1321 ........................................................................................ 2

33 U.S.C. § 1341 ........................................................................................ 2

33 U.S.C. § 1342 ........................................................................................ 2

33 U.S.C. § 1342(b)(2) ............................................................................. 32

33 U.S.C. § 1342(b)(5) ............................................................................. 32

33 U.S.C. § 1342(d)(4) ............................................................................. 32

33 U.S.C. § 1344 ........................................................................................ 2

33 U.S.C. § 1344(f)(1)(C) ......................................................................... 42

33 U.S.C. § 1361 ...................................................................................... 52

33 U.S.C. § 1361(a) .................................................................................. 51

33 U.S.C. § 1362(7) ...................................................................... 34, 49, 53

33 U.S.C. § 1362(12) .................................................................................. 2

Pub. L. No. 80-845 § 2(d)(1), 62 Stat. 1156 (1948) .............................. 33

Pub. L. No. 80-845 § 10(e), 62 Stat. 1161 (1948) ................................. 34

Pub. L. No. 87-88 § 8(a), 75 Stat. 204 (1961) ........................................ 34

Pub. L. No. 89-234 § 5(c), 79 Stat. 903 (1965) ...................................... 34

**Code of Federal Regulations**

33 C.F.R. § 328.3 ................................................................................. 5, 36

33 C.F.R. § 328.3 (2014) ................................................................... 2, 3, 4

33 C.F.R. § 328.3(a) (2014) ............................................................... 3

33 C.F.R. § 328.3(a)(1) ...................................................................... 30

33 C.F.R. § 328.3(a)(2) ...................................................................... 16

33 C.F.R. § 328.3(a)(3) ...................................................................... 38

33 C.F.R. § 328.3(a)(4) (2014) ........................................................... 16

33 C.F.R. § 328.3(a)(5) ...................................................................... 48

33 C.F.R. § 328.3(b) (2014) ............................................................... 46

33 C.F.R. § 328.3(b)(3) ...................................................................... 19

33 C.F.R. § 329.16 .............................................................................. 14

40 C.F.R. § 120.2 ................................................................................. 5

40 C.F.R. § 232.2 (2014) ..................................................................... 2

40 C.F.R. § 232.2(q) (2014) .............................................................. xiv

## Federal Registers

68 Fed. Reg. 1991 (Jan. 15, 2003) ...................................................... 3

88 Fed. Reg. 3004 (Jan. 18. 2023) ........ 1, 2, 4, 14, 15, 23, 24, 30, 32-44, 46, 48-51, 56, 60

88 Fed. Reg. 61964 (Sept. 8, 2023) ......... 1, 5, 17, 23, 25, 37, 38, 40, 41, 44, 48, 52, 57-60

## Legislative History

S. Rep. No. 92-414, 1st Sess. at 7 (1971) ...................................... 1, 34

S. Rep. No. 92-1236, 2d Sess., at 144 (1972) (Conf. Rep.) ............... 34

# GLOSSARY

| | |
|---|---|
| 1986 Regulations | 33 C.F.R. § 328.3(a) (2014) (Corps); 40 C.F.R. § 232.2(q) (2014) (EPA) |
| pre-2015 regime | The Agencies' pre-2015 and pre-*Sackett* application of the 1986 Regulations |
| status quo regime | The Agencies' post-*Sackett* application of the 1986 Regulations (where the 2023 Rule is enjoined, including in Texas and Idaho) consistent with relevant case law including *Sackett* and the *Rapanos* plurality, as informed by applicable guidance, training, and experience |
| 2023 Rule | *Revised Definition of "Waters of the United States,"* 88 Fed. Reg. 3004 (Jan. 18. 2023) |
| Conforming Rule | *Revised Definition of "Waters of the United States"; Conforming*, 88 Fed. Reg. at 61964 |
| Amended Regulations | The regulations put in place by the 2023 Rule, as amended by the Conforming Rule: 33 C.F.R. § 328.3 (Corps); 40 C.F.R. § 120.2 (EPA) |
| Agencies | U.S. Army Corps of Engineers and U.S. Environmental Protection Agency |
| APA | Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* |
| CWA or Act | Clean Water Act, 33 U.S.C. § 1251 *et seq.* |
| Business Plaintiffs | Plaintiffs in *Am. Farm Bureau Fed'n v. EPA*, No. 3:23-cv-20 (S.D. Tex.) |
| Bus. Mot. | Dkt. No. 107 |
| State Plaintiffs | Plaintiffs in *Texas v. EPA*, 3:23-cv-17 (S.D. Tex.) |
| Tx. Mot. | Dkt. No. 106 |
| PI Order | Memorandum Opinion and Order Granting Preliminary Injunction, Dkt. No. 60 |

## INTRODUCTION

Congress enacted the Clean Water Act ("CWA" or "Act") to replace prior state-led efforts to regulate water pollution that proved "inadequate in every vital aspect." S. Rep. No. 92-414, 1st Sess. at 7 (1971). With the "2023 Rule," the Army Corps of Engineers and Environmental Protection Agency (collectively, "Agencies") updated the regulations that specify which waters are covered by the CWA. 88 Fed. Reg. 3004, 3006-07 (Jan. 18, 2023). Months later, in *Sackett v. EPA*, the Supreme Court hailed the Act as a "great success" but narrowed the scope of covered waters and in the process clarified that certain aspects of the 2023 Rule were unlawful. 598 U.S. 651, 658 (2023).

Instead of issuing guidance on the Supreme Court's decision (as the Agencies had done in the past), the Agencies issued a new "Conforming Rule" to amend the regulations put in place by the 2023 Rule consistent with *Sackett*. 88 Fed. Reg. 61964 (Sept. 8, 2023). The resulting "Amended Regulations" eliminate the significant-nexus standard that this Court identified as a serious concern at the preliminary injunction stage, substantially reducing the scope of covered waters, and made other changes consistent with *Sackett* that shrink the scope of covered waters.

Plaintiffs have not established standing to press a facial challenge to the Amended Regulations. Their alleged injuries-in-fact rest on speculative, hypothetical scenarios and, regardless, are not fairly traceable to the Amended Regulations (as opposed to the CWA or the Supreme Court's interpretation thereof). Plaintiffs' claims also are unripe and are better left for future administrative proceedings or adjudication in as-applied contexts that would allow for development of a factual record.

1

In any event, the Amended Regulations are reasonable, reasonably explained, and procedurally proper. Each of Plaintiffs' sundry challenges to discrete pieces of the regulatory definition of "waters of the United States" lacks merit and should be rejected.

## BACKGROUND

The CWA's objective is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The statute prohibits unauthorized discharges "of any pollutant by any person," *id.* § 1311(a), to "navigable waters," broadly defined as "the waters of the United States, including the territorial seas," *id.* § 1362(7). Waters that meet that definition are often called "covered," or "jurisdictional," waters. The scope of key CWA provisions is tied to that definition, including permitting programs that regulate discharges of pollutants, *see id.* §§ 1311(a), 1362(12), 1342, 1344; provisions concerning water quality standards and impaired waters, *id.* § 1313(a)-(d); the oil spill prevention and response program, *id.* § 1321; and the state certification process for federally-authorized activities, *id.* § 1341.

Since the CWA's enactment, the Agencies defined covered waters in regulations. *See* 88 Fed. Reg. at 3011. In 1986 and 1988, the Agencies recodified regulations that (with some minor revisions) remained in effect until 2015. *See* 33 C.F.R. § 328.3 (2014) (Corps); 40 C.F.R. § 232.2 (2014) (EPA) ("1986 Regulations"); *see* 88 Fed. Reg. at 3012. The 1986 Regulations defined "waters of the United States" to include seven categories: (1) traditional navigable waters, i.e., waters that are, were, or may be used "in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide;" (2) interstate waters, including interstate wetlands; (3) "other waters," i.e.,

2

intrastate waters which could affect interstate or foreign commerce; (4) impoundments; (5) tributaries; (6) territorial seas; and (7) adjacent wetlands. 33 C.F.R. § 328.3(a) (2014). The 1986 Regulations also defined terms such as "wetlands" and "adjacent." *Id.*

The Agencies refined their application of the 1986 Regulations over time and as informed by Supreme Court decisions. In *United States v. Riverside Bayview Homes, Inc.*, the Court upheld the Corps' assertion of CWA jurisdiction over adjacent wetlands. 474 U.S. 121, 135 (1985). In *Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers* ("*SWANCC*"), the Court held that the use of "nonnavigable, isolated, intrastate waters" by migratory birds was not a sufficient basis for the exercise of federal authority under the "other waters" category of the 1986 Regulations. 531 U.S. 159, 164-66, 168, 171-72 (2001). In response, the Agencies established coordination procedures for that category to comport with *SWANCC. See* 68 Fed. Reg. 1991, 1996 (Jan. 15, 2003).

In *Rapanos v. United States*, the Court assessed the Agencies' assertion of jurisdiction over certain adjacent wetlands and, in a decision fractured in its rationale, remanded for further consideration. 547 U.S. 715, 757 (2006) (Scalia, J., plurality); *id.* at 786-87 (Kennedy, J., concurring). The *Rapanos* plurality's standard considered CWA coverage to extend to "relatively permanent, standing or continuously flowing bodies of water," *id.* at 739, that are connected to traditional navigable waters, as well as wetlands with a "continuous surface connection" to such waters. *Id.* at 742. While the *Rapanos* plurality found "waters of the United States" to be more limited than Justice Kennedy, who concurred in the judgment, the phrase does "not necessarily exclude seasonal rivers, which contain continuous flow during some months of the year but no flow during dry

months." *Id.* at 732 n.5. Justice Kennedy interpreted the Act as covering wetlands with a "significant nexus" to traditional navigable waters. *Id.* at 759 (Kennedy, J., concurring). The Agencies issued guidance on how to apply certain provisions of the 1986 Regulations consistent with the *Rapanos* plurality's and Justice Kennedy's opinions. Under the guidance, non-navigable tributaries and adjacent wetlands were generally covered if they met either the *Rapanos* plurality standard or the significant-nexus standard. The Agencies' application of the 1986 Regulations—implemented consistent with relevant case law and longstanding practice, as informed by applicable guidance, training, and experience—is referred to as the "pre-2015 regulatory regime," 88 Fed. Reg. at 3006 n.6, or "pre-2015 regime."

The 2023 Rule largely codified the pre-2015 regime. *Id.* at 3007. Like the 1986 Regulations, the 2023 Rule categorically included traditional navigable waters, the territorial seas, and interstate waters; as well as wetlands adjacent to these waters. *Id.* at 3142. But unlike the 1986 Regulations' categorical inclusion of tributaries and wetlands adjacent to other covered waters, and coverage of non-navigable intrastate waters based on interstate commerce, the 2023 Rule required those waters to meet either the *Rapanos* plurality standard or the significant-nexus standard. *Id.* at 3142-43; *see also* 33 C.F.R. § 328.3 (2014); 88 Fed. Reg. at 3006 (describing both standards). The 2023 Rule's preamble provided "substantial guidance" in implementing both standards. 88 Fed. Reg. at 3068. The 2023 Rule also codified in the regulations exclusions from the definition that the Agencies had generally applied under the pre-2015 regime. *Id.* at 3142-43.

States and business groups challenged the 2023 Rule in three courts. This Court and the District of North Dakota preliminarily enjoined the Rule as to state plaintiffs. Dkt. No. 60 ("PI Order"); *West Virginia v. EPA*, 669 F. Supp. 3d 781 (D.N.D. 2023). Another court dismissed on standing and ripeness grounds. Order at 1, 21-22, *Kentucky v. EPA*, No. 3:23-cv-7 (E.D. Ky. Mar. 31, 2023), Dkt. No. 51. The Sixth Circuit enjoined the 2023 Rule as to *Kentucky* plaintiffs pending appeal of their dismissal. Order at 7, *Kentucky v. EPA*, No. 23-5345 (6th Cir. May 10, 2023), Dkt. No. 28. Accordingly, the pre-2015 regime remained in effect in 27 states, including Texas and Idaho.

While these cases were pending, the Supreme Court decided *Sackett*. The Court's opinion revisited the definition of "waters of the United States" in considering the CWA's coverage of adjacent wetlands. *Sackett* concluded that "the *Rapanos* plurality was correct," and adopted its standard. 598 U.S. at 671, 678. The Agencies then issued the Conforming Rule to conform the regulations put in place by the 2023 Rule to the *Sackett* decision, which substantially narrowed the scope of covered waters. 88 Fed. Reg. 61964 (Sept. 8, 2023). The Conforming Rule removed the significant-nexus standard as a basis for jurisdiction; removed wetlands from the interstate waters category; limited the "other waters" category to lakes and ponds; and redefined "adjacent" to mean "having a continuous surface connection." *See id.* at 61968-69; *see also* Amendments to 40 C.F.R. 120.2 and 33 C.F.R. 328.3, https://perma.cc/737Y-6NBJ (redline showing changes between 2023 Rule and Conforming Rule). The 2023 regulations, as amended by the Conforming Rule, are referred to as the "Amended Regulations." The Conforming Rule made the Amended Regulations immediately effective. 88 Fed. Reg. at 61964. Where an

injunction of the 2023 Rule applies, including in Plaintiff States, the Agencies are applying the pre-2015 regime consistent with *Sackett* ("status quo regime").

## NATURE AND STAGE OF THE PROCEEDINGS

After the Agencies issued the Conforming Rule, Plaintiffs filed amended complaints challenging the Amended Regulations and certain aspects of the Conforming Rule and 2023 Rule. Dkt. Nos. 90 & 91. Plaintiffs moved for summary judgment on February 2, 2024. Dkt. Nos. 106 ("Tx. Mot.") & 107 ("Bus. Mot.").

## STANDARD FOR DECISION

In moving for summary judgment, Plaintiffs bear the burden to establish standing and ripeness. *Ctr. For Biological Diversity v. EPA* ("*CBD*"), 937 F.3d 533, 536 (5th Cir. 2019). To establish standing, they must demonstrate (1) injury-in-fact that is (2) fairly traceable to the Amended Regulations and that (3) would be redressed by a favorable decision. *Id.* To establish ripeness, Plaintiffs must also demonstrate that their claims are both "fit" for judicial review and that they will not suffer hardship if review is delayed. *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008). If and to the extent that the Court reaches the merits, under the Administrative Procedure Act ("APA"), "summary judgment serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Yogi Metals Grp. Inc. v. Garland*, 567 F. Supp. 3d 793, 798 (S.D. Tex. 2021) (cleaned up), *aff'd*, 38 F.4th 455 (5th Cir. 2022). Agency action may be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *United States v. Johnson*, 632 F.3d 912, 928 (5th

Cir. 2011) (cleaned up). But this is a "narrow and highly deferential" standard. *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 449 (5th Cir. 2021) (cleaned up). If the applicable statute is ambiguous as to the specific issue and the implementing agency's construction is reasonable, the agency is entitled to deference. *Id.* at 433 (citing *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 842-43 (1984)). Where *Chevron* does not apply, *Skidmore* deference applies to agency interpretations of statutes. *Baylor Cnty. Hosp. Dist. v. Price*, 850 F.3d 257, 261 (5th Cir. 2017) (referring to *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)). And because Plaintiffs bring a facial challenge, they "must establish that no set of circumstances exists under which the regulation would be valid." *Reno v. Flores*, 507 U.S. 292, 301 (1993) (cleaned up).

## SUMMARY OF THE ARGUMENT

Plaintiffs' speculative and conclusory assertions of Article III injury fall well short of demonstrating standing. They have failed to show a concrete injury-in-fact caused by the Amended Regulations. Their claims are also unripe—further factual development would aid the Court and Plaintiffs would not suffer hardship in delaying review until an actual controversy exists. Even if Plaintiffs established subject-matter jurisdiction to pursue their claims, the Amended Regulations should be upheld. The Amended Regulations faithfully conform to Supreme Court precedent, and the text and purpose of the CWA, and reasonably limit the scope of covered waters.

## ARGUMENT

### I.  Plaintiffs lack standing.

Plaintiffs have failed to carry their burden to establish standing. State and Business Plaintiffs may not rely on each other for standing because they now (a) raise unique claims, *see, e.g.*, Bus. Mot. at 28-29 (raising the major questions doctrine that State Plaintiffs do not raise); *Davis v. FEC*, 554 U.S. 724, 734 (2008) (holding that plaintiff must have standing for "each claim they seek to press"); (b) raise distinct purported injuries, *see infra* Part VI (explaining that the scope of any relief should be tailored to established injuries); and (c) seek different relief, *compare* Bus. Amended Compl. at 48 (seeking remand without vacatur) *with* Tx. Amended Compl. at 38 (seeking vacatur); *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) ("At least one plaintiff must have standing to seek each form of relief requested in the complaint.").

Further, State Plaintiffs forfeited their standing argument. *E.T. v. Paxton*, 41 F.4th 709, 718 n.2 (5th Cir. 2022) (explaining that for parties invoking federal jurisdiction and bearing the burden of satisfying standing, "arguments *in favor* of standing . . . can be forfeited"). They moved for summary judgment and bear the burden of *proving* standing; they have no excuse to raise standing only in reply. *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016) ("Reply briefs cannot be used to raise new arguments."). Nor can Plaintiffs rely on the Court's prior standing analysis at the preliminary injunction stage: Plaintiffs must establish standing to challenge the *Amended Regulations*, which are different from the 2023 Rule—the subject of the preliminary injunction. *See Moore v. Hosemann*, 591 F.3d 741, 744 (5th Cir. 2009). Plaintiffs also must demonstrate standing

with the manner and degree of evidence required at the successive stages of the litigation. And for summary judgment, the burden of proof is higher than for preliminary injunction. *E.g.*, *La. State by & through La. Dep't of Wildlife & Fisheries v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872, 880 (5th Cir. 2023) (state failed to establish standing at summary judgment despite demonstrating standing for preliminary injunction).

Because Plaintiffs fail to carry their burden on standing, summary judgment should be granted in favor of the Agencies.

### A. Business Plaintiffs' purported Article III injuries are unsubstantiated and not cognizable as a matter of law.

Business Plaintiffs submit substantively similar declarations to the ones that the Court has already held were too "conclusory and speculative," even before the Conforming Rule substantially narrowed the rule's scope. *See* PI Order at 29. While Business Plaintiffs assert they have associational standing, which requires proving that their *members* have standing, *CBD*, 937 F.3d at 536, all except three Business Plaintiffs submitted declarations failing to identify *any* member purportedly harmed by the Amended Regulations, Bus. Mot. at 12-15. Those declarations cannot demonstrate injury-in-fact. *See NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010) (holding that association lacked standing because it provided "no evidence" showing that a "specific number" of its members were harmed by the challenged ordinance). And the three member declarants Business Plaintiffs do offer (McGrew, Reed, and Cianbro)[1] purport

---

[1] Plaintiffs' declarations referenced in this brief are those attached to their summary judgment motions.

injury from only a narrow portion of the Amended Regulations, which cannot support standing for *all* of Business Plaintiffs' claims, *see Davis*, 554 U.S. at 733, and in any event, present no cognizable injuries-in-fact.

The only harms Business Plaintiffs' members assert arise out of "business uncertainty"—costs in determining whether they may be subject to requirements under the CWA, delaying business decisions, and/or taking other actions to avoid potential liability—they say is caused by the Amended Regulations. *E.g.*, McGrew Decl. ¶¶ 10-14; Reed Decl. ¶¶ 4, 11-14; Cianbro Decl. ¶¶ 7-8. But as evidenced by these declarants' conclusory assertions, their purported business-uncertainty injuries "are highly nebulous in both character and degree and are a far cry from the type of 'concrete and particularized' injury required for Article III standing." *ViroPharma, Inc. v. Hamburg*, 777 F. Supp. 2d 140, 147 (D.D.C. 2011), *aff'd*, 471 F. App'x 1 (D.C. Cir. 2012). Business Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Members' "state of confusion" regarding the exact scope of the Amended Regulations is "not a concrete injury." *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 825 (5th Cir. 2022). Even if their injuries were not speculative, they are not tied to the Amended Regulations but to language the Supreme Court chose in *Rapanos* and adopted in *Sackett*. *See Rapanos*, 547 U.S. at 739, 742 (coining "relatively permanent" and "continuous surface connection"); *Sackett*, 598 U.S. at 671, 678 (adopting these terms). Relatedly, a

"desire to obtain legal advice is not a reason for universal standing." *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1069 (7th Cir. 2020).

### B. State Plaintiffs' purported Article III injuries are similarly speculative and unsupported.

Like Business Plaintiffs, State Plaintiffs' claims that regulatory uncertainty may cause delays in project implementation are unsupported and too speculative to establish standing. *E.g.*, Terlizzi Decl. ¶¶ 8-10; Nelson Decl. ¶ 11; Easley Decl. ¶ 9. And State Plaintiffs' purported costs to develop trainings to teach their citizens "about how to interpret, apply, and comply" with the Amended Regulations are not only unsupported by any evidence; they are not even traceable to the Amended Regulations, which do not require states to incur such costs. *E.g.*, Miller Decl. ¶ 4.c; Nelson Decl. ¶ 10; Tewalt Decl. ¶ 12.d; *see Washington v. U.S. Dep't of Health & Hum. Servs.*, 482 F. Supp. 3d 1104, 1118 (W.D. Wash. 2020) (holding costs to inform citizens about changes not traceable to challenged regulation when public outreach was not required under the regulation).

While State Plaintiffs also assert pocketbook costs to implement changes in CWA programs or to comply with CWA requirements (such as permitting) because of the Amended Regulations, these injuries also are too speculative to establish injury-in-fact. State Plaintiffs must proffer more than just conclusory assertions about purported added administrative costs. *See La. Dep't of Wildlife*, 70 F.4th at 883 (holding Louisiana failed to demonstrate standing at summary judgment when, among other things, it only offered unsupported affidavit testimony of increased administrative costs resulting from new

11

regulation). Instead, State Plaintiffs offer little more than speculation that the Amended Regulations, which *narrow* the scope of jurisdictional waters, *supra* Background, *could* lead to an increase in administrative costs. *See* Booher Decl. ¶ 2.d; Savage Decl. ¶¶ 5, 7-8; Haagenson Decl. ¶¶ 9-10; Nelson Decl. ¶¶ 5, 7, 9 (speculating without any support that the Amended Regulations will lead to added administrative costs).

Similarly, State Plaintiffs' assertions of harms to their quasi-sovereign interests in the economic well-being of their citizens are unsubstantiated. Several State Plaintiff declarants attest that the Amended Regulations will cause a cascade of economic harms to various Texas and Idaho industries and citizens. *E.g.*, Tewalt Decl. ¶ 12.b, d-h, 14; Miller Decl. ¶¶ 4.d, 5. For example, both Miller and Tewalt speculate, without any supporting facts, that the Conforming Rule "will make pesticide applications more difficult and expensive," and "take previously productive lands out of use." Tewalt Decl. ¶ 12.d; Miller Decl. ¶ 4.c; *see also* First Miller Decl. ¶ 4.c; First Tewalt Decl. ¶ 13.d (claiming the *exact* same harms from the 2023 Rule). These claims lack any substantive support and rely on a speculative chain of hypotheticals that do not account for the Amended Regulations, which are substantially narrower in scope than the 2023 Rule. *See La. Dep't of Wildlife*, 70 F.4th at 883. Because State Plaintiffs' inherent role as a co-regulator under the CWA requires them to implement new regulations, they have also failed to show how these allegedly threatened injuries are traceable to the Amended Regulations or redressable by vacatur. *See Washington*, 482 F. Supp. 3d at 1118.

Special solicitude "does not absolve States from substantiating a cognizable injury, and neither the Supreme Court nor [the Fifth Circuit] has held that it alters the

requirements that the injury must be concrete and particularized." *La. Dep't of Wildlife*, 70 F.4th at 882. Even if State Plaintiffs demonstrated an injury-in-fact to their quasi-sovereign interests, they are precluded from bringing a *parens patriae* suit against the Government. The Fifth Circuit in *Louisiana Department of Wildlife* recently expressed skepticism that Louisiana had standing to bring a *parens patriae* suit to protect its quasi-sovereign interest in the "general economic well-being" of its citizens by challenging a federal regulation. 70 F.4th at 882 n.5. While a state may have *parens patriae* standing to "assert its rights under federal law," it does not have standing to sue the Government "to protect her citizens from the operation of federal statutes." *Id.* The court further opined that the challenge likely fell in the prohibited category, as Louisiana challenged the operation of a federal statute—a regulation issued under the National Marine Fisheries Act. *Id.* Here, the same reasoning applies. State Plaintiffs lack standing to bring a *parens patriae* suit against the Agencies to protect their citizens from a regulation issued under the CWA.

**C.     On a claim-by-claim basis, Plaintiffs do not have standing to bring any of their individual challenges.**

Even if their injuries are generally cognizable, Plaintiffs failed to substantiate their injuries for any specific claim. They proffer only speculative, conclusory assertions of harms that are not concrete or particularized for each claim. *Davis*, 554 U.S. at 733. Plaintiffs also fail to meet their burden to show that any purported injury is traceable to the Amended Regulations or redressable with a favorable decision. *CBD*, 937 F.3d at 536; Bus. Mot. at 15 (offering only one conclusory statement for these requirements).

### 1.    Plaintiffs fail to demonstrate standing to challenge each jurisdictional category in the Amended Regulations.

Plaintiffs fail to show the necessary injury-in-fact, which must be "concrete and particularized"—in other words, "real", "personal and individual"—and must be "actual or imminent," to establish standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

Regarding the Amended Regulations' coverage of interstate waters, no business-member declarant alleges harm from the interstate waters category. Instead, Business Plaintiffs simply point out that the Agencies consider portions of the Amargosa River to be covered solely by this category but allege no injury from the Amended Regulations' continued coverage of that river. *See* Bus. Mot. at 16. State Plaintiffs do not allege that they are harmed by coverage of any *particular* interstate waters and proffer only an abstract injury. They present a map purporting to show several "minor, non-navigable water features" crossing the Texas border, Tx. Mot. at 13, but do not allege any harm from potential coverage of these features. Nor is there any indication that these features would be covered at all, let alone *solely* under the interstate waters category. Contrary to State Plaintiffs' contention, listing by the Corps under the Rivers and Harbors Act is not the only way that a water can be a traditional navigable water under the CWA. *See* 88 Fed. Reg. at 3071 (stating that traditional navigable waters under the CWA "include, but are not limited to, the section 10 waters under the Rivers and Harbors Act"); 33 C.F.R. § 329.16 (stating that absence from the Corps' list of determinations of navigability under the Rivers and Harbors Act "should not be taken as an indication that the waterbody is not navigable"). State Plaintiffs have not assessed whether any of these allegedly "minor"

14

waters are actually traditional navigable waters or jurisdictional under other categories (e.g., tributaries of traditional navigable waters). *See* Conway Decl. ¶ 2 ("The map is not suitable for ascertaining navigational purposes of any depicted water feature.").

Moreover, the Amended Regulations' interstate waters category no longer includes interstate wetlands, meaning that the unlikely possibility that categorical inclusion of interstate waters might have any real-world impact for Plaintiffs is even more unlikely. Similarly, the Conforming Rule's removal of the significant-nexus standard further restricted the waters that could be jurisdictional based solely on their *connection* to interstate waters. And the 2023 Rule preamble provides more clarity on the extent of an interstate water compared to the status quo regime. 88 Fed. Reg. at 3073 (specifying the extent of interstate waters that are lakes and ponds or streams and rivers).

Even if State Plaintiffs showed it was reasonably likely that the interstate waters category could affect unidentified water features or unnamed projects, asserting only an "objectively reasonable likelihood" of injury is "inconsistent with [the] requirement that threatened injury must be certainly impending to constitute injury in fact." *Clapper*, 568 U.S. at 410 (cleaned up). Because no Plaintiff has identified any specific way it is harmed by the interstate waters category, Plaintiffs lack standing to press this claim.

Likewise, for impoundments, Plaintiffs identify no particular feature that falls or likely would fall under the Amended Regulations' impoundments category. The sole business-member declarant purporting harm from the broad reach of "impoundments" simply asserts, vaguely and without evidence, that "rural communities" have impoundments that "could now be jurisdictional." Cianbro Decl. ¶ 6. Cianbro fails to

identify those communities, explain how their features would be covered, or identify any harm from potential jurisdiction. *See id.* Such conclusory and speculative harms are not "imminent" and fail to establish injury-in-fact. *Spokeo*, 578 U.S. at 339; *Clapper*, 568 U.S. at 411-16 (holding that respondents lacked standing to challenge a statute where they did not establish with any certainty that they would imminently be affected and incurred costs simply out of a "reasonable fear" that they could be). Nor are Cianbro's conclusory speculations accurate: the Amended Regulations narrowed the regulations' coverage of impoundments from impoundments of *all* jurisdictional waters to only certain ones. *Compare* 33 C.F.R. § 328.3(a)(2), *with* 33 C.F.R. § 328.3(a)(4) (2014). As for State Plaintiffs, they fail to even assert *any* harm from the impoundments category.

Plaintiffs also fail to identify any particular feature that falls or likely would fall under the Amended Regulations' coverage of tributaries, "relatively permanent" waters, "adjacent" wetlands, or intrastate lakes and ponds. Again, business-member declarants simply assert, without evidence, that certain features on their properties "may" or "could" be considered jurisdictional under the Amended Regulations, which might impose additional costs or delays, require them to abandon projects, or subject them to liability. McGrew speculates that the "relatively permanent" requirement may "potentially" result in certain streams being covered and that the vagueness of the term "adjacency" "may" result in certain features being covered.[2] McGrew Decl. ¶¶ 10-12; *contra Spokeo*, 578

---

[2] McGrew also purports injury from the Amended Regulations' alleged inclusion of "isolated prairie potholes," McGrew Decl. ¶ 10, but does not identify which jurisdictional

U.S. at 339. While she states that her company incurred costs due to the uncertainty of the term "adjacent," McGrew Decl. ¶ 12, she cannot manufacture standing "by inflicting harm" based on "fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. Reed asserts, without support, that the "relatively permanent" standard "adds to the uncertainty regarding [his] ditches." Reed Decl. ¶ 13. And Cianbro likewise baselessly asserts that unidentified farms "appear" to have jurisdictional waters under the "relatively permanent" standard and states that the lack of clarity in "adjacent," "relatively permanent," and "continuous surface connection," "could trigger" costs and delays in unidentified construction projects. Cianbro Decl. ¶¶ 5, 7-8. These conclusory assertions that fail to identify concrete and particularized injury are insufficient to establish injury-in-fact. *Spokeo*, 578 U.S. at 339; *CBD*, 937 F.3d at 545.

In fact, much of Plaintiffs' concern stems from language that appears in the *preamble* to the 2023 Rule, not the Amended Regulations. *E.g.*, McGrew Decl. ¶ 11 (asserting that the "relatively permanent" standard "as described in the preamble" may result in jurisdictional streams). Plaintiffs have not demonstrated that those preamble statements "ha[ve] immediate legal or practical consequences." *NRDC v. EPA*, 559 F.3d 561, 565 (D.C. Cir. 2009). Indeed, the Agencies may later provide further implementation guidance, *see* 88 Fed. Reg. at 61966. So Plaintiffs have not, and cannot,

---

category the isolated prairie potholes on her properties may fall under, nor explain why those features may be covered by the Amended Regulations.

demonstrate harm from the preamble language. *See Racing Enthusiasts & Suppliers Coal. v. EPA*, 45 F.4th 353, 359 n.3 (D.C. Cir. 2022).

Similarly, State Plaintiffs' purported injuries fail to establish injury-in-fact because they too provide mere "conclusory assertions," *CBD*, 937 F.3d at 545, that unidentified geographical features may now become covered under the Amended Regulations' allegedly broad expansion of jurisdictional waters, *e.g.*, Savage Decl. ¶ 5; *id.* ¶ 7 (speculating that "the scope of the conforming Rule is unclear and could be much larger than implied by the regulatory text"); Haagenson Decl. ¶ 10 (similar).

Ultimately, Plaintiffs' asserted injuries are not only unsupported by evidence, they are not traceable to the Amended Regulations, but to the CWA's prohibition on discharging pollutants without a permit. *See* 33 U.S.C. § 1311. That prohibition may cause persons to assess whether certain waters on their property are covered or seek permits. Plaintiffs have not shown that the Amended Regulations have changed that aspect of the CWA in any way. In fact, Plaintiffs' allegations of the Agencies' expansion of these categories stem from alleged vagueness of terms that the Supreme Court coined—"relatively permanent" and "continuous surface connection." *See supra* Part I.A.

> **2.    Plaintiffs fail to demonstrate standing to challenge the Amended Regulations' ditch exclusion.**

Plaintiffs also fail to show any particularized, concrete, or imminent injury from the Amended Regulations' ditch exclusion. Plaintiffs simply assert non-cognizable, business-uncertainty harms from the ditch exclusion's allegedly "nebulous standards." Bus. Mot. at 14; *see also* Booher Decl. ¶ 2.d; *see supra* Part I.A. Even if such harms were

cognizable, Plaintiffs have no basis to allege that the Amended Regulations require "*every* roadside ditch" to be evaluated because the Amended Regulations *codify* a ditch exclusion, which does not exist in the 1986 Regulations. Bus. Mot. at 14; Booher Decl. ¶ 2.d; 33 C.F.R. § 328.3(b)(3). More importantly, Plaintiffs identify no project affected by the ditch exclusion. *See* Bus. Mot. at 14; Booher Decl. ¶ 2.d.

Business Plaintiff member Cianbro vaguely asserts that unidentified ditches in unknown "rural communities . . . could now be jurisdictional," which lacks specificity, concreteness, and imminence for injury-in-fact. Cianbro Decl. ¶ 6. Reed asserts, without evidence, that his ditches "may" be jurisdictional and states that because of this possibility, he will incur costs to avoid potential liability from discharging into jurisdictional waters. Reed Decl. ¶¶ 11, 15, 17; *see also* Bus. Mot. at 15. This purported injury also lacks imminence because injuries from "reasonable fear" of regulatory liability are too speculative to amount to injury-in-fact. *Clapper*, 568 U.S. at 415-16. Reed's injury stems from a "highly attenuated chain of possibilities"—where the fertilizers or pesticides Reed applies fall into ditches on Reed's farm; the Agencies then consider those ditches covered; and Reed is then subject to an enforcement action for discharging pollutants into the ditches without a permit—that fails to show a sufficiently likely actual or threatened injury for injury-in-fact. *Clapper*, 568 U.S. at 410; Reed Decl. ¶¶ 14-15. And if Reed incurs costs to avoid potential liability, such injury is self-inflicted and not cognizable as it is based on "fears of hypothetical future harm that is not certainly impending," *Clapper*, 568 U.S. at 416, and traceable to the general structure of the CWA, not the Amended Regulations, *see supra* Part I.C.1.

State Plaintiffs' purported injuries from the ditch exclusion fare no better. Declarant Booher attests that, because the Amended Regulations' ditch exclusion is not a categorical one, a Texas agency may need to consider potential CWA permitting for every hypothetical future transportation project near a ditch. Booher Decl. ¶ 2.d. But there was *no* ditch exclusion in regulations prior to the Amended Regulations and it was always prudent for the Texas agency to assess the possibility that proposed discharges into a roadside ditch (or wetlands associated with the ditch) could trigger CWA permitting. And like Business Plaintiffs, Booher has not identified any certainly impending projects where the ditch exclusion is implicated.

### 3.  Plaintiffs fail to demonstrate standing for their remaining constitutional and APA challenges.

Business Plaintiffs raise vagueness, Commerce Clause, nondelegation, and major questions doctrine challenges. *See* Bus. Mot. at 26-30. Their vagueness challenge fails because their members' declarations of purported injuries from allegedly vague terms lack specificity, concreteness, and imminence. *See supra* Part I.C.1 (summarizing purported injuries from allegedly vague terms). They have failed to show "any imminent or even credible threat of prosecution" from enforcement of the purportedly vague terms. So Business Plaintiffs lack standing to "preemptively challenge [the Amended Regulations] under the Due Process Clause." *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024). As for their remaining challenges, Business Plaintiffs identify no member that has been injured. *See City of Kyle*, 626 F.3d at 237 (requiring "specific" members to be identified for associational standing).

State Plaintiffs' vagueness, Tenth Amendment, and procedural challenges also lack specificity, concreteness, and imminence. *See* Tx. Mot. at 21-29. While State Plaintiffs' declarants assert that certain terms are "unconstitutionally vague," *e.g.*, Nelson Decl. ¶ 12, they do not identify a concrete or imminent harm that flows from this vagueness. Nor do they attest to an imminent or credible threat of prosecution from the enforcement of these purportedly vague terms. *McCraw*, 90 F.4th at 782. And because State Plaintiffs fail to demonstrate a concrete or imminent injury from the Amended Regulations, they lack standing to raise their procedural APA claims and Tenth Amendment claim. *See Summers v. Earth Island Inst*., 555 U.S. 488, 496 (2009); *West Virginia v. U.S. Dep't of Health & Hum. Servs*., 145 F. Supp. 3d 94, 110 (D.D.C. 2015), *aff'd sub nom. W. Va. ex rel. Morrisey v. U. S. Dep't of Health & Hum. Servs*., 827 F.3d 81 (D.C. Cir. 2016).

## II.     The case is not ripe for review.

For the same reasons that Plaintiffs lack standing, Plaintiffs' claims are not constitutionally ripe for review. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014). Their facial challenges—the "most difficult challenge to mount successfully," *McCraw*, 90 F.4th at 798—are also not ripe for prudential reasons. To prevail, Plaintiffs must establish "no set of circumstances" under which the Amended Regulation would be valid. *Reno*, 507 U.S. at 301 (quotation omitted). Facial challenges are "disfavored" because they "raise the risk of premature interpretation of statutes on the basis of factually barebones records." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (quotation omitted). This is not to say that Plaintiffs can never bring

21

a facial pre-enforcement challenge to the Amended Regulations. But at a minimum, they must show their claims are prudentially ripe: that (1) their claims are fit for review and (2) they would suffer hardship absent judicial review. *Lopez v. City of Hous.*, 617 F.3d 336, 341 (5th Cir. 2010). Plaintiffs fail to meet each prong. There is zero factual development relevant to their claims, Plaintiffs purport only speculative injuries, and thus, their purported harms are "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all." *Id.* at 342 (quotation omitted).

A.    **Plaintiffs' claims are not fit for review.**

Plaintiffs' claims are unfit for review because factual development would significantly advance the Court's ability to address Plaintiffs' claims and resolution of the issues now will not foster effective administration of the CWA. *Texas v. United States*, 497 F.3d 491, 498-99 (5th Cir. 2007).

1.    **Plaintiffs' specific challenges to each jurisdictional category are not fit for review.**

Broadly, Plaintiffs' purported injuries "may not occur at all," *Lopez*, 617 F.3d at 342, because their declarants acknowledge that effect of the Amended Regulations on their potential activities is not yet fully elucidated, *see, e.g.*, Savage Decl. ¶¶ 5-7; Cianbro Decl. ¶ 7. More facts would significantly advance the Court's ability to adjudicate each of Plaintiffs' claims by providing the Court with information on the nature of specific waters or projects in or near waters. *Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 413 F.3d 479, 483 (5th Cir. 2005) (holding case was unripe because the court "ha[d] no sense of what . . . activities would fall under EPA's permitting requirements").

For example, Plaintiffs' challenge to the interstate waters category would benefit from more concrete facts because as explained *supra* Part I.C.1, State Plaintiffs' map of water features crossing Texas's borders is insufficient to show that those features would be covered. Plaintiffs have not shown an actual dispute regarding "waters" (i.e., "rivers, lakes, and other waters") that "flow across, or form a part of, State boundaries." 88 Fed. Reg. at 3072; *see* 88 Fed. Reg. at 61966 (discussing interstate waters in the context of *Sackett*; excluding interstate wetlands). Nor have they shown that such waters are not covered under other categories. 88 Fed. Reg. at 3072 ("Interstate waters also include waters that meet the definition of a traditional navigable water or are tributaries of traditional navigable waters or the territorial seas[.]"). So even if Plaintiffs were correct that the Agencies' *future application* of the interstate waters category *might* be inconsistent with *Sackett*, such a case may never arise. The Court should wait for such a case and decide it on a developed record. *See Nat'l Park Hosp. Ass'n v. Dep't of Interior* ("*NPHA*"), 538 U.S. 803, 812 (2003) (holding case unfit for review because regulation might be lawful in certain circumstances).

Likewise, Plaintiffs' challenge to the impoundments category would benefit from more facts because, among other deficiencies, Plaintiffs fail to show that, under the Amended Regulations, the Agencies assert jurisdiction over an impoundment simply because (a) of its connection to covered waters and (b) it being jurisdictional at the time of impoundment. *See S. Fla. Water Mgmt. Dist. v. Miccosukee Tribe of Indians*, 541 U.S. 95, 112 (2004) (finding further factual development necessary to resolve dispute over whether two waterbodies are meaningfully distinct). And, an impoundment may be

covered under another jurisdictional category. *See* 88 Fed. Reg. at 3067. This Court should decline Plaintiffs' invitation to decide the lawfulness of the impoundments category based on speculation that it *might* be applied unlawfully in certain hypothetical circumstances; such an invitation is flatly inconsistent with the standard set forth in *Reno*.

Plaintiffs' challenge to the Amended Regulations' coverage of ditches that qualify as relatively permanent (a)(3) tributaries is also hypothetical and devoid of context. *See* Tx. Mot. at 16; Bus. Mot. at 24-25. Plaintiffs fail to present any concrete facts that would aid this Court's review, such as any ditch's bed, bank, flow duration, and downstream connection to (a)(1) waters. *See, e.g.*, Booher Decl. ¶ 2.d; Reed Decl. ¶¶ 8-11.

Plaintiffs' remaining challenges to the Amended Regulations' incorporation of the *Rapanos* plurality standard and treatment of adjacent wetlands and (a)(5) lakes and ponds are also based on speculation that they could be applied in an unlawful manner. The Court should decline to evaluate these aspects of the Amended Regulations based on speculation that they *might* be applied unlawfully in hypothetical situations.

And adjudication now would not foster effective administration of the CWA because it would "hinder agency efforts to refine its policies," *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 735 (1998), and "necessarily prematurely cut off [the Agencies'] interpretive process." *Tex. Indep. Producers*, 413 F.3d at 483. For example, much of Plaintiffs' arguments stem from how the Agencies *may* apply implementation guidance in the 2023 Rule's preamble in an unlawful manner. *See, e.g.*, Bus. Mot. at 19-20 (challenging the preamble's discussion of relatively permanent waters); Tx. Mot. at 19-20 (same). As explained above, such challenges are not cognizable. And Plaintiffs'

24

challenges to "hypothetical and non-specific" preamble statements would benefit from the Agencies' interpretation and application, *NRDC*, 559 F.3d at 565, which the Agencies plan to do, 88 Fed. Reg. at 61966. Plaintiffs' challenges are unfit for review.

### 2.    Plaintiffs' vagueness challenges are not fit for review.

Plaintiffs' facial vagueness claims are particularly unfit for judicial review. It is "well established that vagueness challenges . . . which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." *United States v. Brooks*, 681 F.3d 678, 696 (5th Cir. 2012) (quotation omitted). So this Court must reject Plaintiffs' facial challenge until it can discern whether the Amended Regulations violate the due process clause as applied to the specific facts presented. *Id.* (dismissing facial vagueness challenge). Even if this Court entertains the facial vagueness challenge, Plaintiffs must show that in all applications, the Amended Regulations (1) are "so indefinite that no one could know what is prohibited," and (2) vest "virtually complete discretion" to permit arbitrary enforcement. *Roark*, 522 F.3d at 551. Additional facts are required to review each element of Plaintiffs' facial claims. *Reno*, 507 U.S. at 301.

First, it is premature to assess whether the purportedly vague terms are vague *in all applications* on the current record before the Court. *Tex. Indep. Producers*, 413 F.3d at 483. Review now risks "premature interpretation" based on "factually barebones records." *Wash. State Grange*, 552 U.S. at 450.

Second, whether a regulation fails to give fair notice is almost always inherently fact-dependent. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982). Courts typically consider a regulation "within the context of the particular

conduct to which it is being applied," *Great Am. Houseboat Co. v. United States*, 780 F.2d 741, 747 (9th Cir. 1986), such as an enforcement action where the Agencies have imposed a penalty. *See, e.g.*, *B&B Insulation, Inc. v. Occupational Safety & Health Rev. Comm'n*, 583 F.2d 1364, 1368-72 (5th Cir. 1978). While Plaintiffs focus on the CWA's potential penalties and their own subjective confusion, Bus. Mot. at 28; Tx. Mot. at 24, they allege no actual or threatened enforcement and no imposition of a criminal penalty. Because the question of fair notice would benefit from additional factual development, Plaintiffs' vagueness challenge is not fit for review. *See Texas*, 497 F.3d at 499.

**B.     Plaintiffs will not suffer hardship if judicial review is delayed.**

Plaintiffs also fail the hardship prong because they do not show that the effect of the Amended Regulations on them is "sufficiently direct and immediate." *Midship Pipeline Co., L.L.C. v. FERC*, 45 F.4th 867, 872 (5th Cir. 2022); *see also Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164 (1967).[3]

Plaintiffs are in the same position as the petitioners in *Toilet Goods* and *NPHA*, where the Supreme Court held that the petitioners could not establish hardship should judicial review be delayed because the challenged regulations did not impose any immediate obligations on the parties. In *Toilet Goods*, manufacturers challenged an agency regulation requiring them to provide the agency with access to certain information upon request. Holding that petitioners' challenge was not ripe, the Supreme Court noted

---

[3] Plaintiffs' failure to show injury-in-fact for their vagueness challenge, *see supra* Part I.C.3, means they also fail to show hardship, *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 587-89 (1972).

the regulation did not govern the petitioners' conduct but only the circumstances in which the agency could require inspections. To that end, the Court recognized that it had "no idea whether or when" petitioners would be subject to the inspections they were challenging. 387 U.S. at 163-65. Similarly, in *NPHA*, a group of concessioners challenged a regulation that announced the position an agency would take in any contract dispute arising out of concession contracts. 538 U.S. at 810. Nothing in the regulation imposed requirements on the concessioners' day-to-day operations. *Id.*

Likewise, this Court and the parties have "no idea whether or when" the Amended Regulations will ever have a direct or immediate impact on Plaintiffs' interests. *Toilet Goods*, 387 U.S. at 163-65; Reed Decl. ¶ 15 ("my ditches *may* constitute 'waters of the U.S.' under the [Amended Regulations]") (emphasis added); McGrew Decl. ¶ 12 ("The Rosser Sand and Gravel Quarry in Kaufman County may or may not have WOTUS depending on how 'adjacency' is interpreted"). The only immediate hardship that Plaintiffs point to is "regulatory uncertainty" and the desire to plan for the possibility that the Amended Regulations will impose additional CWA obligations. *E.g.*, McGrew Decl. ¶¶ 12-13; Terlizzi Decl. ¶ 8; Nelson Decl. ¶ 11. They also purport that any harm arising out of this regulatory uncertainty would be exacerbated should the Amended Regulations be found unlawful. *E.g.*, Miller Decl. ¶ 5 ("[T]he expenses and planning . . . to comply with the [Amended Regulations] will have been wasted and unnecessary" should the rule fail to "survive judicial review."). But the Supreme Court rejected these exact claims of "hardship" in *NPHA*, 538 U.S. at 811.

27

And with better factual development, Plaintiffs will have meaningful opportunities to raise these claims later in a more appropriate judicial forum. For example, Plaintiffs could challenge a Corps jurisdictional determination that a feature was a "water of the United States." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 602 (2016). Plaintiffs can also challenge CWA permit requirements or raise these claims as a defense to an enforcement action. Plaintiffs' speculation falls far short of the "hardship" they must demonstrate to show that this pre-enforcement challenge is ripe for review.

## III.   The Amended Regulations' jurisdictional categories are lawful.

If this Court reaches the merits, it should uphold the Amended Regulations' jurisdictional categories. To prevail on their claims regarding the treatment of each jurisdictional category, Plaintiffs must "establish that no set of circumstances exists under which [each challenged category] would be valid." *Reno*, 507 U.S. at 301 (quotation omitted); *Roark*, 522 F.3d at 548-55. Plaintiffs have not met that burden. Because the categories are reasonable, they should be upheld.

### A.   Coverage of interstate waters is appropriate.

The Court should reconsider its prior findings concerning the interstate waters category. PI Order at 23-26. The categorical inclusion of interstate waters is lawful.

#### 1.   The Commerce Clause provides authority to cover interstate waters.

Article I, Section 8 of the Constitution authorizes Congress to regulate interstate commerce. That authority is "broad enough to permit congressional regulation of activities causing air or water pollution, or other environmental hazards that may have

effects in more than one State." *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452

U.S. 264, 282 (1981). Interstate waters are by definition waters of "the several States."

U.S. Const. art. I, § 8. They are channels and instrumentalities of interstate commerce and

have a substantial relation to interstate commerce. *See United States v. Lopez*, 514 U.S.

549, 558-59 (1995). Activities that pollute waters are economic in nature. *See, e.g.*,

*United States v. Ho*, 311 F.3d 589, 602 (5th Cir. 2002); *Freier v. Westinghouse Elec.

Corp.*, 303 F.3d 176, 202 (2d Cir. 2002). And water pollution that flows from one state to

another degrades water quality, *see Arkansas v. Oklahoma*, 503 U.S. 91, 98-100 (1992),

resulting in substantial economic impacts.

Coverage of interstate waters does not raise the constitutional questions at issue in

*SWANCC* that concerned this Court in its preliminary injunction order. In *SWANCC*, the

Court was concerned with whether non-navigable *intrastate* waters were sufficiently

connected to traditional navigable waters. *See SWANCC*, 531 U.S. at 161, 169, 171. The

Court considered that, as to intrastate waters, Congress had exercised its power over

traditional navigable waters. *Id.* at 172. Later, and again in the context of intrastate

waters, *Sackett* held that the CWA covers relatively permanent waters connected to

traditional navigable waters. *Sackett*, 598 U.S. at 678 (quoting *Rapanos*, 547 U.S. at

742).[4] Application of the relatively permanent standard to non-navigable intrastate waters

---

[4] *Sackett* and the *Rapanos* plurality at times use the phrase "traditional interstate navigable waters," *Sackett*, 598 U.S. at 678 (quoting *Rapanos*, 547 U.S. at 742), which appears to be shorthand for waters that "Congress was focused on"; "waters that were or had been navigable in fact or which could reasonably be so made." *Id.* at 672 (quoting *SWANCC*, 531 U.S. at 172); *see also Rapanos*, 547 U.S. at 724 (describing the 1986

therefore avoids the constitutional concerns that troubled the Court in *SWANCC*, and the Agencies recognize that Congress did not exercise all aspects of its Commerce Clause authority for *intrastate* waters. *See* 88 Fed. Reg. at 3037.

But Congress's authority to regulate *interstate* waters is unquestionably broader, and Congress exercised that authority in the CWA. While *Sackett*, *Rapanos*, *SWANCC*, and *Riverside Bayview* do not speak to that authority, other Supreme Court cases do. The Court recognized that the CWA supplanted federal common law mechanisms that were available to states to address the problem of pollution moving across state borders. *City of Milwaukee v. Illinois*, 451 U.S. 304, 317-19 (1981). And the Court has long recognized that this problem is properly addressed by federal law. *Illinois v. City of Milwaukee*, 406 U.S. 91, 102, 104 (1972) ("federal, not state, law . . . controls the pollution of interstate or navigable waters"); *id.* at 105 ("Rights in interstate streams, like questions of boundaries, 'have been recognized as presenting federal questions.'" (citation omitted)).

Because the Tenth Amendment reserves to the states only those powers not delegated to the United States and because Congress exercised its Article I authority over interstate waters, coverage of interstate waters is not in conflict with the Tenth Amendment, nor does it raise federalism concerns.

### 2.    The Clean Water Act covers interstate waters.

Interstate waters are waters of multiple states. Thus, a plain reading of "waters of the United States" encompasses all interstate waters. And the Supreme Court has

---

Regulations' reference to traditional navigable waters—then, as now, codified at 33 C.F.R. § 328.3(a)(1)—as "traditional interstate navigable waters").

repeatedly recognized that Congress intended the CWA to cover interstate waters. *See supra* Part III.A.1. Inclusion of all interstate waters is not in tension with the term "navigable waters." That term has import in determining which intrastate waters are covered by the CWA. But it does not—and need not—limit coverage of interstate waters. *See Rapanos*, 547 U.S. at 731 (plurality) ("We need not decide the precise extent to which the qualifiers 'navigable' and 'of the United States' restricts coverage of the Act."). Indeed, the Court has consistently acknowledged that the term "navigable waters" is not limited to traditional navigable waters. *E.g.*, *id.* ("We have twice stated that the meaning of 'navigable waters' in the Act is broader than the traditional understanding of that term (citing *SWANCC*, 531 U.S. at 167; *Riverside Bayview*, 474 U.S. at 133); *Sackett*, 598 U.S. at 672 (noting *SWANCC*'s acknowledgment that the CWA extends to more than traditional navigable waters).[5]

Although the Supreme Court has stressed the import of the word "navigable," the Court has not done so in the context of the interstate waters category. *See Riverside Bayview*, 474 U.S. at 131 (describing wetlands at issue as adjacent to a navigable waterway); *SWANCC*, 531 U.S. at 171 (describing isolated ponds "wholly located" in Illinois); *Rapanos*, 547 U.S. at 729 (plurality) (describing "Michigan wetlands" that eventually connect to traditional navigable waters); *Sackett*, 598 U.S. at 662-63 (describing EPA's contention that wetlands had a sufficient connection to "an intrastate

---

[5] Plaintiffs, like the court in *Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. 2019), overlook that interstate waters are encompassed in "waters of the United States" and that the Supreme Court has required a connection to traditional navigable waters only in determining the extent that the CWA covers non-navigable intrastate features.

body of water"). Importantly, "any reliance upon judicial precedent must be predicated upon careful appraisal of the *purpose* for which the concept of 'navigability' was invoked in a particular case." *Kaiser Aetna v. United States*, 444 U.S. 164, 171 (1979) (citation omitted). "[W]aters of the United States" is admittedly ambiguous as to inclusion of intrastate non-navigable waters. In *SWANCC*, *Rapanos*, and *Sackett*, the Court focused on "navigable waters" in finding that non-navigable intrastate waters must be connected to traditional navigable waters to be covered. In doing so, the Court was concerned with correcting an overbroad reading of the CWA as applied to those waters.

Moreover, the CWA's text, structure, purpose, and legislative history support inclusion of all interstate waters. *See* 88 Fed. Reg. at 3072-75; 2023 Rule Response to Comments Document, *available at* https://www.regulations.gov/document/EPA-HQ-OW-2021-0602-2493, Sec. 2.3.2.1 at 27-47. Including interstate waters is consistent with the Act's objective "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a), because the integrity of interstate waters cannot be fully protected by a single state. *See* 88 Fed. Reg. at 3073.[6]

---

[6] In the CWA, Congress recognized federal authority over interstate waters and provided states with mechanisms to restore and maintain the integrity of interstate waters—with federal oversight. Congress expressly consented to states entering into multi-state agreements or compacts. 33 U.S.C. § 1253. A state's permitting program (administered under state law or an interstate compact) must ensure that any other state with waters that may be affected by the state's decision on a permit application receive notice and opportunity for a hearing; an affected state can submit recommendations to the permitting state; and the permitting state must notify the affected state and EPA of its failure to accept such recommendations and its reason. *Id.* § 1342(b)(2), (b)(5); *Arkansas*, 503 U.S. at 99 (citing *Milwaukee*, 451 U.S. at 325-26). EPA may veto a state's permit and may issue a permit if a state fails to issue a compliant permit. *Id.* § 1342(d)(4). These statutory

Section 303(a)(1) of the CWA, 33 U.S.C. § 1313(a)(1), provides further evidence that Congress intended to retain coverage of all interstate waters. This Court should reconsider its contrary conclusion in its preliminary injunction order. Section 303(a)(1) expressly retained pre-CWA water quality standards applicable to interstate waters. It speaks only to the potential for EPA to determine that a state's preexisting water quality standard is inconsistent with the Act, upon which EPA would notify the state to specify the changes needed and promulgate those changes if the state does not timely do so. *Id.* So section 303(a)(1) does not suggest that regulation of some interstate waters is left entirely to states; it *requires* federal regulation if state standards are inadequate. These state standards, approved or issued by EPA, apply to only waters of the United States. So absent continued federal jurisdiction, Congress would have no reason to specifically retain water quality standards for interstate waters, much less to require EPA to issue water quality standards for interstate waters. *See id.* § 1313(c)(2)(A), (c)(4).

Predecessor statutes and congressional history also show congressional intent that the CWA continue longstanding coverage of interstate waters, i.e., "all rivers, lakes, and other waters that flow across, or form a part of, State boundaries," 88 Fed. Reg. at 3072 (quoting 33 U.S.C. § 466i(e) (1952)), especially because Congress intended to broaden federal jurisdiction. The 1948 statute declared that the "pollution of interstate waters" and their tributaries is "a public nuisance and subject to abatement[.]" Pub. L. No. 80-845

---

provisions strongly indicate congressional intent to include interstate waters regardless of their connection to traditional navigable waters.

§ 2(d)(1), 62 Stat. 1156 (1948). Interstate waters were defined without reference to navigability. *See* Pub. L. No. 80-845 § 10(e), 62 Stat. 1161 (1948). In 1961, Congress broadened the 1948 statute and made the pollution of "interstate or navigable waters" subject to abatement, retaining the definition of "interstate waters." Pub. L. No. 87-88 § 8(a), 75 Stat. 204, 208 (1961). In 1965, Congress required states to develop water quality standards for "interstate waters or portions thereof within such State." Pub. L. No. 89-234 § 5(c), 79 Stat. 903, 907-08 (1965); *see also* 33 U.S.C. § 1173(e) (1970) (retaining definition of interstate waters). In 1972, Congress replaced the abatement approach with permitting programs for discharges of pollutants to "navigable waters," defined as "waters of the United States." *See* 33 U.S.C. §§ 1311(a); 1362(7). In doing so, Congress sought to expand, not narrow, federal protections. *See* S. Rep. No. 92-414, 1st Sess. at 7 (1971) (recognizing that prior efforts to control water pollution had been "inadequate in every vital aspect");[7] *contra* Bus. Mot. at 17. Accordingly, the phrase "navigable waters" defined broadly as "waters of the United States" does not evince congressional intent to exclude interstate waters that had long been covered. Interpreting the CWA to exclude non-navigable interstate waters would over-emphasize the term "navigable waters" while rendering "waters of the United States" devoid of significance.

---

[7] *See also Milwaukee*, 451 U.S. at 317-18 (stating that the CWA was a "complete rewriting" of existing law, to "establish an all-encompassing program of water pollution regulation" (citation omitted)); S. Rep. No. 92-1236, 2d Sess. at 144 (1972) (Conf. Rep.) (omitting "navigable" from "waters of the United States" and urging that the term "be given the broadest possible constitutional interpretation"); S. Rep. No. 92-414, 1st Sess. at 77 (1971) (stating that "interstate waters" had been interpreted to "severely limit[]" implementation of the 1965 Act); 88 Fed. Reg. at 3050-51.

*See Rapanos*, 547 U.S. at 731 n.3 (plurality) (rejecting argument that would "preserve the traditional import of the qualifier 'navigable' in the *defined* term 'navigable waters,' at the cost of depriving the qualifier 'of the United States' *in the definition* of all meaning").

**B.     The Amended Regulations' coverage of impoundments is lawful.**

The Court should uphold the (a)(2) impoundments category. First, the Agencies straightforwardly reason that an impoundment that is currently covered by another category is also covered by the impoundments category. 88 Fed. Reg. at 3075.[8] Second, the Agencies reasonably assert that impounding a water does not, on its own, render a covered water non-jurisdictional. *Id.* at 3075-76. Contrary to Plaintiffs' argument, this approach is generally consistent with the status quo regime. *See id.* at 3076-77. The Supreme Court has confirmed that impounding covered waters does not make them non-jurisdictional. *See S.D. Warren Co. v. Me. Bd. of Env't Prot.*, 547 U.S. 370, 379 n.5 (2006); *see also Econ. Light & Power Co. v. United States*, 256 U.S. 113, 123-24 (1921) (concluding that "artificial obstructions" that render a river non-navigable do not make a traditional navigable river beyond Congress's power to preserve the river for purposes of future transportation).

Continuing coverage of impounded waters is consistent with *Sackett*. Plaintiffs misleadingly omit the remainder of the footnote they quote, Tx. Mot. at 15; Bus. Mot. at 23-24, which in context does not support their argument:

---

[8] Plaintiffs take no issue with that rationale but argue that (a)(2) coverage is unlawful when it is based on another category that is unlawful. Even if such an argument is successful, it would impact which waters could be covered under other categories—not the (a)(2) category's inclusion of impoundments that are otherwise covered.

> Although a barrier separating a wetland from a water of the United States would ordinarily remove that wetland from federal jurisdiction, a landowner cannot carve out wetlands from federal jurisdiction by illegally constructing a barrier on wetlands otherwise covered by the CWA. Whenever the EPA can exercise its statutory authority to order a barrier's removal because it violates the Act, see 33 U.S.C. §§ 1319(a)-(b), that unlawful barrier poses no bar to its jurisdiction.

598 U.S. at 678 n.16. A "barrier separating" a wetland from covered waters is not equivalent to the type of structure used to create an impoundment, and the Court expressed no opinion on structures placed in (a)(1) or (a)(3) waters. Also, impounded waters usually retain some hydrologic connection to downstream waters. *See* 88 Fed. Reg. at 3076.[9] Moreover, consistent with *Sackett*'s recognition that an *illegal barrier* cannot remove wetlands coverage, the Agencies acknowledge that a lawfully constructed impoundment may have the effect of rendering an impounded water non-jurisdictional. *Id.* at 3076 n.94 (discussing impoundment pursuant to a CWA permit), 3077 n.96 (noting exception for waste treatment systems constructed prior to CWA).

Contrary to Plaintiffs' arguments, more than "seepage" from an impoundment would be needed for impounded waters to be covered under (a)(1), (a)(3), or (a)(4). 33 C.F.R. § 328.3. The 2023 Rule preamble's section on impoundments only mentions seepage in discussing that impoundments typically do not prevent all water flow; and in the context of the significant-nexus standard. 88 Fed. Reg. at 3076, 3079. Seepage would have no bearing on whether a water was covered at the time of impoundment.

---

[9] While Plaintiffs argue that such a connection is not always maintained, they have presented no instance where such a connection is absent and a water could credibly be considered under the impoundments category.

Moreover, Plaintiffs' concern about determining whether a water qualifies as an (a)(2) impoundment because it has been impounded from a jurisdictional water are unfounded. First, such an assessment would be needed only when the impounded water does not qualify under the (a)(1), (a)(3) or (a)(4) category. *Id.* at 3078. Second, property owners and users are best positioned to know the historical characteristics of waters on their property, including prior to the construction of an impoundment, and several assessment tools are readily available to them. *See id.* And if they have any doubt, they can request a determination from the Corps for free. *See id.* at 3011, 3132. Third, and importantly, the Agencies would have the burden of proof to show that the impounded waters were covered. Notably, for an impoundment of an (a)(3) tributary located off-channel (meaning the impoundment has no outlet to the tributary network), the Agencies would need to demonstrate that the impounded water qualified as an (a)(3) tributary at the time of impoundment and that "there was evidence of a flowpath . . . directly or indirectly through another water or waters, downstream from the structure that created the impoundment to a paragraph (a)(1) water." *Id.* at 3078.

## C.  The Amended Regulations reasonably include relatively permanent tributaries and exclude non-relatively permanent ditches.

The Amended Regulations lawfully cover tributaries that meet the relatively permanent requirement from the *Rapanos* plurality standard that the Supreme Court adopted in *Sackett* and exclude ditches that do not meet that standard. 88 Fed. Reg. at 61968; 88 Fed. Reg. at 3142. For over 100 years, regulating tributaries has been "part and parcel of a Federal effort to protect traditional navigable waters." 88 Fed. Reg. at 3025.

Tributaries—whether natural, human-made, or human-altered—can "carry water (and pollutants) to traditional navigable waters, the territorial seas, or interstate waters." *Id.* at 3026. But, under the Amended Regulations, ditches that lack important hydrogeomorphic features and/or relatively permanent flow are non-jurisdictional. *Id.* at 3112, 3142.

### 1.   The Amended Regulations' relatively permanent requirement is the same as *Sackett*'s.

There is no merit to Plaintiffs' arguments that the Amended Regulations' relatively permanent requirement differs from what the *Rapanos* plurality articulated and the Supreme Court adopted in *Sackett*. *See* Tx. Mot. 17, 19-20; Bus. Mot. at 18-21. *Sackett* held that "the CWA extends to more than traditional navigable waters" and encompasses "relatively permanent, standing or continuously flowing bodies of water 'forming geographic[al] features' that are described in ordinary parlance as 'streams, oceans, rivers, and lakes.'" 598 U.S. at 671 (quoting *Rapanos*, 547 U.S. at 739). The Amended Regulations codify that requirement in 33 C.F.R. § 328.3(a)(3). Before *Sackett*, the 2023 Rule incorporated both *Rapanos* standards. 88 Fed. Reg. at 61965. After *Sackett*, the Agencies removed the significant-nexus standard and made clear that they "will continue to interpret the remainder of the definition of 'waters of the United States' in the 2023 Rule consistent with the *Sackett* decision." *Id.* at 61966.

Business Plaintiffs wrongly argue that "the Agencies punted on defining 'relatively permanent' waters because they assumed that, for the most part, such waters would be jurisdictional under the Rule's significant nexus test." Bus. Mot. at 18. The Agencies provided extensive implementation guidance concerning the familiar *Rapanos*

plurality standard, including its relatively permanent requirement. *E.g.*, 88 Fed. Reg. at 3038, 3046, 3084-88, 3102. The Agencies did so to provide "efficiencies and additional clarity for regulators and the public." *Id.* at 3038. That the Agencies crafted such guidance prior to *Sackett*, when they viewed the *Rapanos* plurality standard as one of two available jurisdictional tests (and regarded the significant-nexus standard as superior), has no bearing on the guidance's utility.

At bottom, Plaintiffs are demanding more specific instructions from the Agencies than *Sackett* or the *Rapanos* plurality provided. Plaintiffs allege, for example, there is no definition of the term "relatively permanent" that "provides meaningful guidance," Bus. Mot. at 19; *see also* Tx. Mot. at 19; there are no national or regional "minimum flow duration periods" under that standard, Bus. Mot. at 20; *see also* Tx. Mot. at 20; and "this standard is untenable for an ordinary person attempting to identify the outer brim of the Clean Water Act's jurisdiction." Tx. Mot. at 20. So Plaintiffs' challenge is not to the Amended Regulations, which the Agencies issued to conform to precedent, but to Supreme Court opinions that did not provide the additional clarity Plaintiffs seek. Plaintiffs' allegations simply do not establish unreasonableness on the Agencies' part as they work to interpret and implement precedent. *See Sackett*, 598 U.S. at 659 (describing *Sackett* as the Court's "attempt to identify with greater clarity what the Act means").[10]

---

[10] *See also Sackett*, 598 U.S. at 727 (asserting that the majority opinion "will generate regulatory uncertainty") (Kavanaugh, J., concurring in judgment); *id.* at 707 (noting that CWA jurisdictional determinations are not "*always* easy") (Thomas, J., concurring).

Moreover, Plaintiffs' claims fail because neither *Sackett* nor the *Rapanos* plurality requires the Agencies to provide *any* implementation guidance, let alone *more* or *different* guidance than what they have provided. Plaintiffs do not cite any specific Agency statement about the relatively permanent requirement that conflicts with any specific statement from *Sackett* or the *Rapanos* plurality. For example, State Plaintiffs acknowledge the Agencies' explanation, consistent with *Sackett* and the *Rapanos* plurality, that "[r]elatively permanent waters do not include surface waters with flowing or standing water for only a short duration in direct response to precipitation." 88 Fed. Reg. at 3084. While State Plaintiffs argue that the "Agencies do not describe how they will implement the contours of that phrase," Tx. Mot. at 20, the Agencies reasonably elected to address broader *Sackett* issues through regulatory text and implementation guidance while leaving to future adjudicatory contexts details that would inevitably turn on case-specific facts. *See* 88 Fed. Reg. at 61966; *County of Maui v. Haw. Wildlife Fund*, 140 S. Ct. 1462, 1477 (2020) ("EPA . . . can provide administrative guidance (within statutory boundaries) in numerous ways[.]"); *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 909 (5th Cir. 1983) ("[A]n agency has the discretion to proceed through case-by-case adjudications . . . , rather than through the rulemaking process, for the agency will often confront special problems necessitating a flexible approach for their resolution.") (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 202 (1947)).

Similarly, Business Plaintiffs incorrectly assert that the (a)(3) tributaries category calls for "the sort of freewheeling inquiry *Sackett* rejected." Bus. Mot. at 25*; see id.* (similar incorrect argument that the ditch exclusion's criteria are "vague"). The relatively

permanent requirement invariably entails case-specific determinations. Indeed, the *Rapanos* plurality ordered a case-specific determination on remand. *See Rapanos*, 547 U.S. at 757 (ordering lower courts to first determine "whether the ditches or drains near each wetland are 'waters' in the ordinary sense of containing a relatively permanent flow"). Case-specific tests are the norm and well within the discretion that the Act assigns to the Agencies. *See* 88 Fed. Reg. at 3042. Instructively, when interpreting another CWA provision to require a case-specific approach, the Supreme Court in *Maui* recognized "that a more absolute position . . . may be easier to administer" but would be "inconsistent with major congressional objectives, as revealed by the statute's language, structure, and purpose." 140 S. Ct. at 1477.

Furthermore, the Agencies have provided important parameters for case-specific adjudications. While the Amended Regulations do not define "tributaries," they retain the "well-established definition of an ordinary high water mark . . . to assist in identifying tributaries." 88 Fed. Reg. at 3080. The Agencies have further clarified through implementation guidance that tributaries are geographical features such as "rivers, streams, lakes, ponds, and impoundments" that "flow directly or indirectly through another water or waters to" an (a)(1) water or (a)(2) impoundment. *Id.; see also id.* at 3083-88 (providing guidance for determining whether a water is a tributary and meets the relatively permanent test); 88 Fed. Reg. at 61966 n.2 (noting that lakes and ponds qualify as tributaries if they are relatively permanent and connect to (a)(1) or (a)(2) waters).

Plaintiffs also challenge, without support, the structure of the Amended Regulations and the Agencies' implementation guidance concerning the downstream

41

connection part of the relatively permanent requirement. *See* Tx. Mot. at 16-17; Bus. Mot. at 19. *Sackett* and the *Rapanos* plurality provide that covered waters include any relatively permanent water "connected to" traditional navigable waters. *Sackett*, 598 U.S. at 678 (quoting *Rapanos*, 547 U.S. at 742). Neither *Sackett* nor the *Rapanos* plurality describes or elaborates on this downstream connection. Neither precedent discusses how to evaluate whether a water is a tributary *of* or *to* a downstream water. Therefore, it was reasonable for the Agencies to "maintain[] their interpretation of tributary" and describe the kinds of "[s]ite specific conditions" relevant to whether a tributary actually connects to downstream waters pursuant to the relatively permanent requirement. 88 Fed. Reg. at 3080, 3083 (cleaned up); *see, e.g.*, *id.* at 3082 (example of a deficient connection).

In sum, given that the Agencies have codified the controlling CWA jurisdictional standard from *Sackett*, Plaintiffs' facial claims respecting (a)(3) tributaries and the relatively permanent requirement lack merit.

### 2. The Amended Regulations' treatment of ditches is reasonable.

Plaintiffs baselessly challenge the Amended Regulations' treatment of relatively permanent ditches as (a)(3) tributaries. The CWA generally and conditionally exempts the discharge of dredged or fill material "for the purpose of construction or maintenance of . . . irrigation ditches" or "the maintenance of drainage ditches." 33 U.S.C. § 1344(f)(1)(C). Plainly, "there would be no need for such a permitting exemption" if the Act regarded all ditches to be non-jurisdictional. 88 Fed. Reg. at 3112.

Moreover, Plaintiffs' ditch arguments are at odds with *Sackett* and the *Rapanos* plurality standard it adopts. The plurality explained that "ditches, channels, conduits and

42

the like can all hold water permanently as well as intermittently" and "when they do, we usually refer to them as rivers, creeks, or streams." *Rapanos*, 547 U.S. at 736 n.7 (cleaned up); *accord* 88 Fed. Reg. at 3084 ("Relatively permanent waters do not include surface waters with flowing or standing water for only a short duration in direct response to precipitation."). Further, *Rapanos* itself involved ditches; the plurality concluded that "the lower courts should determine, in the first instance, whether the ditches or drains near each wetland are 'waters' in the ordinary sense of containing a relatively permanent flow." 547 U.S. at 757. As the Agencies explain, "those further lower-court proceedings would have been superfluous if the manmade character of the ditches and drains had precluded their coverage." 88 Fed. Reg. at 3026.

Courts applying the relatively permanent standard, including after *Sackett*, agree that ditches can function as tributaries and qualify as "waters of the United States" if they have relatively permanent flow. *See, e.g.*, *S.F. Baykeeper v. City of Sunnyvale*, No. 20-cv-00824, 2023 WL 8587610, at *5 n.3 (N.D. Cal. Dec. 11, 2023) ("The Court is unpersuaded . . . that *Sackett* calls into question whether manmade channels with continuous seasonal flows such as this can be [waters of the United States] merely because they are manmade."); *Tri-Realty Co. v. Ursinus Coll.*, 124 F. Supp. 3d 418, 468 (E.D. Pa. 2015) ("[N]umerous courts have concluded that artificial waterways may be jurisdictional waters under the CWA.").

*Lewis v. United States*, 88 F.4th 1073 (5th Cir. 2023), did not address whether ditches could function as tributaries. *Contra* Tx. Mot. 16-17. In *Lewis*, the Corps had previously asserted jurisdiction over adjacent wetlands under the significant-nexus

43

standard, and "the district court found, and [the Corps] conceded, that the *Rapanos*

adjacency [continuous surface connection] test could not be met on the undisputed facts

that the court thoroughly described." 88 F.4th at 1079. But *Sackett* "cleared the air" by

eliminating the significant-nexus standard and requiring a continuous surface connection.

*Id.* at 1078. The Fifth Circuit described the connection—"the nearest relatively

permanent body of water [to the wetlands in question] is removed miles away from the

Lewis property by roadside ditches, a culvert, and a non-relatively permanent tributary"

—and concluded there was not a continuous surface connection on these facts. *Id.* The

question in *Lewis* was not whether the ditches could be "waters of the United States," and

the Corps had not asserted that these ditches were. In any case, under the Amended

Regulations, ditches cannot qualify as tributaries unless they are relatively permanent.

### D.      The regulatory coverage of adjacent wetlands accords with *Sackett*.

The Amended Regulations correctly implement *Sackett* and the *Rapanos* plurality

opinion by: (1) providing that wetlands "adjacent" to covered waters are "waters of the

United States," and (2) defining "adjacent" to mean "having a continuous surface

connection." 88 Fed. Reg. at 61969; 88 Fed. Reg. at 3142. Plaintiffs' arguments to the

contrary are without merit. *See* Tx. Mot. at 18; Bus. Mot. at 21-23.

First, contrary to Plaintiffs' misreading of *Sackett*, the word "indistinguishable" is

not alone determinative of whether adjacent wetlands are "waters of the United States";

rather, the term informs the application of the "continuous surface connection"

requirement. Specifically, *Sackett*: (1) adopted the familiar "continuous surface

connection" requirement from the *Rapanos* plurality; (2) held that adjacent wetlands must

44

have a "continuous surface connection" with covered waters to qualify as "waters of the United States"; and (3) explained that wetlands are "as a practical matter indistinguishable from waters of the United States"—and therefore are themselves covered—"when" there is a "continuous surface connection" between wetlands and covered waters. 598 U.S. at 678. *Sackett* does not require the party asserting CWA jurisdiction to prove that wetlands and covered waters are visually identical; indeed, as *Sackett* itself notes (and as explained below), wetlands that abut covered waters have long been regarded as meeting the continuous surface connection requirement. Further, as judicial decisions applying the familiar test illustrate, *see, e.g.*, *United States v. Lucas*, 516 F.3d 316, 326-27 (5th Cir. 2008), the demonstration that wetlands have a continuous surface connection and so are indistinguishable is a fact-specific one, as lawfully remains the case under *Sackett* and the Amended Regulations.

Second, Plaintiffs mistakenly read *Sackett* to require a continuous surface *water* connection between wetlands and covered waters. The *Sackett* majority opinion did not use such phrasing. Moreover, the *Rapanos* plurality (which *Sackett* followed) repeatedly uses phrases like continuous *physical* connection to describe the continuous surface connection requirement. *See Rapanos*, 547 U.S. at 747, 751 n.13, 755. For example: "Wetlands are 'waters of the United States' if they bear the 'significant nexus' of physical connection, which makes them as a practical matter *indistinguishable* from waters of the United States." *Id.* at 755; *accord Sackett*, 598 U.S. at 678 (jurisdictional wetlands have an "unimpaired connection" to covered waters) (citation omitted).

45

Thus, as the Agencies reasonably explain, "[a] continuous surface connection is not the same as a continuous surface *water* connection, by its terms and in effect." 88 Fed. Reg. at 3096.[11] Indeed, the most common example of wetlands meeting the continuous surface connection requirement are wetlands that abut or touch covered waters. *See id.* at 3089 ("[I]n a substantial number of cases, adjacent wetlands abut (touch) a jurisdictional water."). This is so even though surface water need not be present for wetlands to exist. Under longstanding wetlands criteria that the Supreme Court applied in *Riverside Bayview*, wetlands are "inundated or saturated by surface or ground water at a frequency and duration sufficient to support . . . a prevalence of vegetation typically adapted for life in saturated soil conditions." 33 C.F.R. § 328.3(b) (2014); *see Riverside Bayview*, 474 U.S. at 135 ("[W]etlands adjacent to lakes, rivers, streams, and other bodies of water may function as integral parts of the aquatic environment even when the moisture creating the wetlands does not find its source in the adjacent bodies of water."). Further, as *Sackett* described the *Riverside Bayview* holding: "the Corps could reasonably determine that wetlands 'adjoining bodies of water' were part of those waters." *Sackett*, 598 U.S. at 677 (quoting *Riverside Bayview*, 474 U.S. at 135 & n.9); *see also id.* at 676 (CWA jurisdiction includes wetlands "contiguous" with covered waters). Likewise, the *Rapanos* plurality described *Riverside Bayview*, 474 U.S. at 135, as upholding the assertion of CWA jurisdiction over wetlands "actually abutting" traditional navigable waters; explaining that the Corps "could reasonably conclude that a wetland that adjoined

---

[11] As explained *supra* at 43-44, *Lewis* is not to the contrary. *Contra* Bus. Mot. at 22.

waters of the United States is itself a part of those waters"; and resolving an ambiguity "in favor of treating all abutting wetlands as waters." *Rapanos*, 547 U.S. at 740-42 (cleaned up).

And courts applying the continuous surface connection requirement agree that proof of physical abutment suffices. *See, e.g.*, *United States v. Mlaskoch*, No. 10-cv-2669, 2014 WL 1281523, at *17 (D. Minn. Mar. 31, 2014) ("Because the affected wetlands abutted these tributaries, jurisdiction under the CWA is proper."); *United States v. Donovan*, No. 96-484, 2010 WL 3000058, at *4 (D. Del. July 23, 2010) ("A continuous surface connection exists when a wetland physically abuts another regulated body of water.") (citation to *Rapanos* plurality omitted), *report and recommendation adopted*, 2010 WL 3614647 (D. Del. Sept. 10, 2010), *aff'd*, 661 F.3d 174 (3d Cir. 2011); *United States v. Brace*, No. 1:17-cv-00006, 2019 WL 3778394, at *24 (W.D. Pa. Aug. 12, 2019) (A "continuous surface connection" "may also occur when a wetland physically abuts another regulated body of water") (quoting *Donovan*, *supra*; cleaned up), *aff'd on other grounds*, 1 F.4th 137 (3d Cir. 2021); *cf. United States v. Andrews*, No. 3:20-cv-01300, 2023 WL 4361227, at *2-3 (D. Conn. June 12, 2023) (upholding CWA jurisdiction over wetlands "directly abut[ting]" a relatively permanent tributary connected to traditional navigable waters; "continuous surface flow paths" also linked the wetlands with the tributary).

At the same time, precedent and the Agencies' experience applying the continuous surface connection requirement demonstrate that physical abutment is not the *only* way for wetlands to meet the requirement. While the CWA does not require a continuous surface *water* connection between wetlands and covered waters (as explained above), such

evidence can suffice to meet the continuous surface connection requirement. *See, e.g.*, *Lucas*, 516 F.3d at 326-27 (considering evidence of kayaking in relatively permanent tributaries and their connected wetlands). Further, depending on the factual context, the requirement can be met when a channel, ditch, swale, pipe, or culvert (regardless of whether such feature would itself be jurisdictional) "serve[s] as a physical connection that maintains a continuous surface connection between an adjacent wetland and a relatively permanent water." 88 Fed. Reg. at 3095*; see, e.g.*, *United States v. Cundiff*, 555 F.3d 200, 212-13 (6th Cir. 2009) (evidence of a channel with surface water flow and surface connections between wetlands and relatively permanent water bodies "during storm events, bank full periods, and/or ordinary high flows;" "it does not make a difference whether the channel by which water flows from a wetland to a navigable-in-fact waterway or its tributary was manmade or formed naturally").

Plaintiffs, however, are not entitled to review of adjacent wetlands scenarios in the abstract. What counts—and defeats Plaintiffs' facial claims under the *Reno* standard of review—is the *legal* alignment between *Sackett*'s and the Amended Regulations' continuous surface connection requirement. 88 Fed. Reg. at 61969; 88 Fed. Reg. at 3095.

### E.  The intrastate lakes and ponds category is lawful.

The (a)(5) lakes and ponds category is reasonable and sufficiently limited. The (a)(5) category includes only lakes and ponds that do not meet another category when the lake or pond is relatively permanent and has a continuous surface connection to (a)(1) or (a)(3) waters. 33 C.F.R. § 328.3(a)(5); *see* 88 Fed. Reg. at 61966. By requiring that covered lakes and ponds have a continuous surface connection to (a)(1) waters or their

tributaries, the (a)(5) category is consistent with *SWANCC* and *Sackett*. *See Sackett*, 598

U.S. at 674 (describing *SWANCC*'s holding that "the Act does not cover isolated ponds");

*id.* at 678 (requiring that a party asserting jurisdiction over adjacent wetlands must

establish that the adjacent body of water is a water of the United States, and that the

wetland has a continuous surface connection to such water) (citing *Rapanos*).

## IV.   The Amended Regulations should also be upheld for broader reasons.

### A.   The Amended Regulations accord with *Sackett*.

*Sackett* found that EPA and the Ninth Circuit had applied the incorrect standard

for CWA jurisdiction (significant-nexus) and an overly broad definition of adjacency. 88

Fed. Reg. 3047-48. *Sackett* then adopted the *Rapanos* plurality standard but did not

expand upon its operative terms "relatively permanent," "connected to," or "continuous

surface connection." 598 U.S. at 678. The Agencies revised their regulations in the wake

of *Sackett*. As revised, they eliminate the significant-nexus standard, adopt the *Rapanos*

plurality standard, are fully consistent with *Sackett*, and represent the best interpretation

of the term "waters of the United States." In coming to this interpretation, the Agencies

employed traditional tools of statutory interpretation. *Am. Hosp. Ass'n v. Becerra*, 142 S.

Ct. 1896, 1904-06 (2022); 88 Fed. Reg. at 3021. At the very least, the Amended

Regulations are a permissible interpretation of an ambiguous phrase, "navigable waters,"

and its definition, "waters of the United States." 33 U.S.C. § 1362(7); *see, e.g.*, *Rapanos*,

547 U.S. at 758 (recognizing the "somewhat ambiguous" terms Congress used to

determine CWA jurisdiction) (Roberts, J., concurring). Deference extends to an agency's

construction of a statute it administers. *See Mexican Gulf Fishing Co. v. U.S. Dep't of*

*Com.*, 60 F.4th 956, 963 (5th Cir. 2023) (applying framework of *Chevron*, 467 U.S. 837). Where *Chevron* does not apply, *Skidmore* deference applies. *See Baylor Cnty. Hosp. Dist.*, 850 F.3d at 261. At the preliminary injunction stage, this Court concluded that *Chevron* was not relevant because: (1) the rule of lenity applies; and (2) the principle of constitutional avoidance precludes deferring to an interpretation that alters the federal-state framework. PI Order at 17-19. This reasoning does not bind the Court now, especially as the Amended Regulations should be considered in the first instance. *Jonibach Mgmt. Tr. v. Wartburg Enters., Inc.*, 750 F.3d 486, 491 (5th Cir. 2014). The rule of lenity does not apply to a facial challenge of a regulation that applies to the entire CWA, simply because the CWA contains some criminal penalties. Lenity applies in criminal enforcement proceedings "at the end of the process," *Albernaz v. United States*, 450 U.S. 333, 342 (1981) (quotation omitted), when "a statute *as applied* remains truly ambiguous after the traditional canons of interpretation have failed," *United States v. Arrieta*, 862 F.3d 512, 516 (5th Cir. 2017) (emphasis added). Further, the Amended Regulations preserve the federal-state framework, *infra* Part IV.D, such that deferring to the Agencies' reasonable interpretation would not pose constitutional concerns.

### B.     Congress lawfully delegated the Agencies rulemaking authority.

The CWA provides an intelligible principle, and Congress's delegation of authority to define "waters of the United States" was lawful. *See* 88 Fed. Reg. at 3020. A delegation is constitutional so long as Congress has set out an "intelligible principle" to guide the exercise of authority. *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474-75 (2001). The Supreme Court has "over and over upheld even very broad delegations" and

has "almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law." *Gundy v. United States*, 139 S. Ct. 2116, 2129-30 (2019) (Kagan, J., plurality) (citation omitted). Here, the underlying objective and policies expressed in the Act provide the "intelligible principle" required to uphold a delegation of legislative power. *See, e.g*., 33 U.S.C. § 1251(a)-(b); 88 Fed. Reg. at 3020-22.

The CWA expressly authorizes prescribing regulations "as are necessary to carry out [EPA's] functions." 33 U.S.C. § 1361(a). And Congress knew that a regulation defining "waters of the United States" would be necessary because the term applies to many of the Act's key provisions. *See supra* Background.

Despite extensive litigation over the scope of "waters of United States," the Supreme Court has never suggested that the Agencies were not delegated authority to define the term. Rather, the Court has affirmed that Congress delegated a "breadth of federal regulatory authority" to the Agencies to address the "inherent difficulties of defining precise bounds to regulable waters." *Riverside Bayview*, 474 U.S. at 134. *Sackett* did not question EPA's authority to issue regulations defining "waters of the United States." 598 U.S. at 665. Nor is *Sackett* inconsistent with the Chief Justice's earlier observation that the Agencies "enjoy[] plenty of room to operate in developing some notion of an outer bound to the reach of their authority." *Rapanos*, 547 U.S. at 758 (Roberts, C.J., concurring).

Moreover, even if, as Business Plaintiffs contend, "Congress has not adequately delegated legislative power to define" covered waters, Bus. Mot. at 30, that would not

51

provide Business Plaintiffs "a narrowing interpretation of the Rule," *id*., that they seek. The Agencies would still need to implement the statute—e.g., make permit decisions, enforce the CWA against unauthorized polluters—but would do so *without* the benefit of a regulatory definition that provides clarity on covered waters.

### C. The major questions doctrine is inapplicable.

The major questions doctrine does not apply, and Business Plaintiffs fail to show how the Amended Regulations assert "extravagant statutory power over the national economy." *West Virginia v. EPA*, 597 U.S. 697, 724 (2022) (quotation omitted). The Amended Regulations merely *define* the scope of the Agencies' regulatory authority and are a far cry from *West Virginia* where EPA asserted a novel interpretation of a provision that "had rarely been used" to "transformative[ly] expan[d]" its regulatory authority. *Id.* Here, the Agencies have exercised their authority to interpret the term "waters of the United States" under 33 U.S.C. § 1361 for decades, which the Supreme Court has long recognized without invoking the major questions doctrine. *See generally Riverside Bayview*, 474 U.S. 121; *SWANCC*, 531 U.S. 159; *Rapanos*, 547 U.S. 715; *Sackett*, 598 U.S. 651. And the Amended Regulations do not expand the Agencies' regulatory authority over "waters of the United States"; they are narrower in scope as compared to the pre-2015 regime. 88 Fed. Reg. at 61966 (removing significant-nexus standard). Even the 2023 Rule was projected to have de minimis costs when compared to the pre-2015 regime. *See* PI Resp. at 26, Dkt. No. 40.

Even if this doctrine applied, it would speak only to whether Congress authorized the Agencies to issue regulations defining "waters of the United States." The CWA

provides "clear congressional authorization" for the Agencies to do so. *See West Virginia*, 597 U.S. at 732 (citation omitted). The doctrine thus provides Plaintiffs no aid.

### D. The Amended Regulations are permissible under the Commerce Clause and do not raise Tenth Amendment concerns.

As explained above, *supra* Part III.A.1, the Commerce Clause provides broad authority to cover interstate waters. The Agencies recognize that the CWA's exercise of Commerce Clause authority is narrower for intrastate waters. The Amended Regulations respect the scope of that authority and states' traditional role over land and water use.

Contrary to Plaintiffs' arguments, regulation of channels of interstate commerce need not be confined to protecting navigability or tied to the effect of pollution in a particular water. *See Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 256 (1964) (concluding that Congress's authority "to keep the channels of interstate commerce free from immoral and injurious uses" is no longer an open question (citation omitted)); *Wickard v. Filburn*, 317 U.S. 111, 127-28 (1942) (finding that a potentially trivial impact can be regulated when the contribution "taken together with that of many others similarly situated, is far from trivial"). The CWA is concerned with protecting more than just navigability. *See, e.g.*, 33 U.S.C. § 1251(a) (stating the objective "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters"). And the CWA nowhere indicates that Congress intended the Agencies to evaluate each water's or pollutant's relation to interstate commerce before finding a violation of the Act. Indeed, the CWA prohibits the discharge "of any pollutant by any person." *Id.* § 1311(a); *see id.* § 1362(7). Courts, including the Supreme Court, have

repeatedly evaluated whether waters qualify as "waters of the United States" without requiring any showing of a particular water's effect on interstate commerce or navigation.

However, as the Agencies recognize, the CWA does not extend to cover all waters and wetlands. The Supreme Court has expressed concerns with prior interpretations of the Act that did not have a sufficient tie to traditional navigable waters. Accordingly, *SWANCC* held that the isolated intrastate ponds at issue were not covered because they serve as a habitat for migratory birds. 531 U.S. at 171-72. And *Sackett* adopted the *Rapanos* plurality's standard, which covers non-navigable waters when they are relatively permanent and connected to traditional navigable waters and covers adjacent wetlands when they have a continuous surface connection to covered waters. 598 U.S. at 671, 677-78 (citations to *Rapanos* plurality omitted). Consistent with *Sackett*, the Amended Regulations apply the *Rapanos* plurality standard.

For the reasons stated above, *see supra* Part III.A.1, the Amended Regulations' interstate waters category is permissible and does not implicate the concerns about state control that the Supreme Court expressed in *SWANCC*. Likewise, because the *Rapanos* plurality standard is incorporated in the Amended Regulations, coverage of non-navigable intrastate waters and adjacent wetlands is permissible under the CWA's Commerce Clause authority and does not shift the balance of federal and state power. States retain their ability to choose whether to regulate many waters and wetlands that are not "waters of the United States," and states are free to regulate waters covered by the CWA more stringently than federal standards. Thus, states retain their traditional

authority and primary role in regulation—the CWA merely provides a federal backstop for covered waters.

### E.    The Amended Regulations are not unconstitutionally vague.

The Court should reject Plaintiffs' facial vagueness challenge, which rests on a laundry list of terms that are allegedly vague simply because they are not specifically defined and do not provide the precise clarity Plaintiffs seek. As explained *supra* Part II.A.2, Plaintiffs must show that these terms are unconstitutionally vague in all circumstances. They failed to meet their burden. Nor have they shown that the Amended Regulations are "so indefinite" or fail to provide fair notice. *Roark*, 522 F.3d at 551.

Plainly, a regulation is not unlawfully vague if "difficulty is found in determining whether certain marginal offenses fall within" it. *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963). "An agency is not obliged to issue a comprehensive definition all at once" and "may proceed case by case . . . in fleshing out the contours of vague statutory terms." *Huawei*, 2 F.4th at 458 (internal quotation marks and citation omitted). So the lack of certain defined or allegedly vague terms does not render the Amended Regulations unconstitutionally vague. *See United States v. Lucero*, 989 F.3d 1088, 1101 (9th Cir. 2021) (upholding the 1986 Regulations as not unconstitutionally vague). Significantly, in affirming criminal penalties for conduct within waters that satisfy (*inter alia*) the *Rapanos* plurality standard, the Fifth Circuit has rejected that the Act was unconstitutionally vague. *Lucas*, 516 F.3d at 327-28.

Plaintiffs broadly attack the use of "relatively permanent" and "continuous surface connection" and thereby attack Supreme Court precedent, as the *Rapanos* plurality coined

these terms and *Sackett* adopted them. *See, e.g.*, *Sackett*, 598 U.S. at 671, 678, 684

(adopting these terms). Their challenge is therefore not to the Amended Regulations,

which were issued to conform to Supreme Court precedent. And because the Amended

Regulations reflect the Court's interpretation of the Act, they cannot be unduly vague.

*See United States v. Lanier*, 520 U.S. 259, 266 (1997) ("[C]larity at the requisite level

may be supplied by judicial gloss on an otherwise uncertain statute."); *United States v.

Morison*, 844 F.2d 1057, 1071 (4th Cir. 1988) ("[A]ll vagueness may be corrected by

judicial construction which narrows the sweep of the statute within the range of

reasonable certainty."); *J & B Ent., Inc. v. City of Jackson*, 152 F.3d 362, 368 (5th Cir.

1998) (rejecting claim that words coined in Supreme Court case and the "subject of a

plethora of opinions" by state and federal courts were vague).

As for Plaintiffs' other allegedly vague terms, like "certain times of the year,"

"extended period," and "short duration," Tx. Mot. 24, those appear in the 2023 Rule's

preamble, not the regulatory text. 88 Fed. Reg. at 3084-88, 3102. They cannot render the

*Amended Regulations* unconstitutionally vague. *See, e.g.*, *Beckles v. United States*, 580

U.S. 256, 265 (2017) (finding guidelines "not amenable to a vagueness challenge").

The Amended Regulations likewise provide Plaintiffs with fair notice of

proscribed behavior. *See FCC v. Fox Television Stations, Inc*., 567 U.S. 239, 253 (2012).

"[P]erfect clarity and precise guidance have never been required" to defeat a facial

vagueness challenge as "[c]lose cases can be imagined under virtually any [regulation]."

*United States v. Williams*, 553 U.S. 285, 304, 306 (2008) (quotations omitted). Thus,

"[w]hat renders a [regulation] vague is not the possibility that it will sometimes be

56

difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Id.* at 306. So the Court must consider any clarifying interpretation or "limiting construction" the Agencies have offered. *Vill. of Hoffman Ests.*, 455 U.S. at 498. Here, Plaintiffs and their members have (cost-free) opportunities to obtain a jurisdictional determination, ensuring as a matter of law that the Amended Regulations are not unduly vague. *See Roark*, 522 F.3d at 552 (holding that opportunity for guidance alleviates vagueness concerns).

## V.   The Agencies reasonably invoked the APA's good cause exception.

Not only do Plaintiffs lack standing to raise their APA procedural claim, *see supra* Part I.C.3, the Agencies reasonably invoked the APA's "good cause" exception when issuing the Conforming Rule. An agency may issue a rule without notice and comment "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(4)(B). In the Fifth Circuit, courts evaluate an agency's invocation of the good cause exception under the APA's "arbitrary and capricious" standard. *Johnson*, 632 F.3d at 928.

In the Conforming Rule, the Agencies reasonably explained why they invoked the good cause exception. 88 Fed. Reg. at 61964-65. The "sole purpose of [the Conforming Rule] is to amend these specific provisions of the 2023 Rule to conform with *Sackett*." *Id.* The Agencies further explained that this revision did not involve the exercise of the Agencies' discretion and thus seeking comment was unnecessary. *Id.* at 61965; *see also McChesney v. Petersen*, 275 F. Supp. 3d 1123, 1136 (D. Neb. 2016), *aff'd sub nom.*

*McChesney v. Fed. Election Comm'n*, 900 F.3d 578 (8th Cir. 2018) (finding agency's promulgation of a rule without notice and comment was "unnecessary" when the rule was not an exercise of substantive agency decision-making). The Agencies further noted that delaying the Conforming Rule's amendments would have created confusion and would have impeded the Agencies' ability to process and approve jurisdictional determinations and certain CWA permits, contrary to the public's interest. 88 Fed. Reg. at 61965. State Plaintiffs themselves have expressed concerns about delays in administering CWA programs and acknowledge that revising the 2023 Rule in light of *Sackett* was "certainly necessary." Tx. Mot. 27.

Courts have found good cause for agencies to revise regulations without notice and comment when intervening judicial decisions have invalidated portions of an existing rule. *See, e.g.*, *Bayou Lawn & Landscape Servs. v. Johnson*, 173 F. Supp. 3d 1271, 1283, 1285 (N.D. Fla. 2016); *Am. Fed'n of Gov't Emps., AFL-CIO v. Block*, 655 F.2d 1153, 1157 (D.C. Cir. 1981). Invocation of the good cause exception for intervening judicial decisions makes sense because "the absence of specific and immediate guidance . . . would have forced reliance . . . upon antiquated [regulations], thereby creating confusion . . . and caus[ing] economic harm and disruption[.]" *Block*, 655 F.2d at 1157.

State Plaintiffs' cited cases are inapposite and do not involve amended regulations responding to judicial precedent that invalidated portions of an existing regulation. Tx. Mot. 28-29. In *Utility Solid Waste Activities Group v. EPA*, 236 F.3d 749, 754-55 (D.C. Cir. 2001), EPA invoked the good cause exception to fix what it described as a word-processing error in the regulatory drafting process. The fix, however, substantively

58

expanded the scope of the regulation. *Id.* And in *Action on Smoking and Health v. Civil Aeronautics Board*, 713 F.2d 795, 800 (D.C. Cir. 1983), the agency outright failed to explain why it invoked the exception. *Id.*; *see also* 5 U.S.C. § 553(b)(4)(B) (providing that agency must "incorporate[ ] the finding [of good cause] *and a brief statement of reasons therefor in the rules issued*") (emphasis added). In contrast, here, the Agencies clearly and reasonably explained their invocation of the good cause exception. 88 Fed. Reg. 61965.

Contrary to State Plaintiffs' contention, the Agencies did not invoke the 2023 Rule's "severability" provision to forgo notice and comment in promulgating the Conforming Rule. Rather, they invoked 5 U.S.C. § 553(b)(4)(B). 88 Fed. Reg. at 61964. In any event, State Plaintiffs are not prejudiced by the inclusion of the 2023 Rule's severability provision. *See* 5 U.S.C. § 706. A court must sever unlawful portions of a regulation if it determines that the agency would have adopted the regulation absent any invalidated portions and that the regulation can still function without its invalidated portions. *Texas v. United States*, No. 1:18-CV-00068, 2023 WL 5951196, at *17 (S.D. Tex. Sept. 13, 2023). The inclusion of an express severability clause is only "an aid" to this assessment, not "an inexorable command." *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 884 n.49 (1997).

## VI.    Any remedy should be narrowly tailored.

With Plaintiffs raising different claims and seeking different relief, *see supra* Part I, any relief the Court might grant "must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018). While vacatur is the "default" remedy

for APA deficiencies in this circuit, *see, e.g.*, *Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022),[12] remand without vacatur can also be appropriate in certain circumstances. *Cent. & S. W. Servs., Inc. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000). Further, any vacatur order must be narrowly tailored to correspond to the Court's holdings on the merits. *See, e.g.*, *VanDerStok v. Garland*, 86 F.4th 179, 196-97 (5th Cir. 2023).[13] Because it is difficult to predict what conclusions on the merits the Court might reach, the Agencies request the opportunity to submit supplemental briefing on remedy issues, should the Court rule in Plaintiffs' favor on any merits issue.

## CONCLUSION

The Court should deny Plaintiffs' motions, grant the Agencies' motion, and enter final judgment in the Agencies' favor.

Respectfully submitted,

TODD KIM
Assistant Attorney General
ENVIRONMENT AND NATURAL
RESOURCES DIVISION

*/s/ Sonya J. Shea (filed with permission of Andrew J. Doyle)*
ANDREW J. DOYLE (*pro hac vice*)
*Attorney-in-Charge*, FL Bar No. 84948

---

[12] The United States and some members of the Supreme Court have recently raised serious questions about whether vacatur is a legally available remedy under the APA at all. *See United States v. Texas*, 599 U.S. 670, 693-94 (2023) (Gorsuch, J., concurring). Recognizing that this Court is bound by current Fifth Circuit precedent, the Agencies reserve their right to pursue these issues further during any appeal.

[13] *See also* 88 Fed. Reg. at 3135; 88 Fed. Reg. at 61966-67 (discussing severability).

*Of Counsel:*
Karyn I. Wendelowski
Elise O'Dea
Environmental Protection Agency

Daniel Inkelas
Erica Zilioli
U.S. Army Corps of Engineers

SONYA J. SHEA (*pro hac vice*)
CA Bar No. 305917
SARAH IZFAR (*pro hac vice*)
DC Bar No. 1017796
HUBERT T. LEE (*pro hac vice*)
NY Bar No. 4992145
ELLIOT HIGGINS (*pro hac vice*)
NY Bar No. 5737903
JIN HYUNG LEE (*pro hac vice*)
DC Bar No. 198095
United States Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Tel: (415) 744-6469 (Doyle)
Tel: (303) 844-7231 (Shea)
Tel: (202) 305-0490 (Izfar)
Tel: (202) 514-1806 (H. Lee)
Tel: (202) 514-3144 (Higgins)
Tel: (202) 514-2640 (J. Lee)
Fax: (202) 514-8865
andrew.doyle@usdoj.gov
sonya.shea@usdoj.gov
sarah.izfar@usdoj.gov
hubert.lee@usdoj.gov
elliot.higgins@usdoj.gov
jin.hyung.lee@usdoj.gov

61

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2024, I filed the foregoing using the Court's CM/ECF system, which will electronically serve all counsel of record registered to use the CM/ECF system.

/s/ *Sonya J. Shea*